# CHESTER CEREPAK, INDIVIDUALLY AND AS FATHER AND NATURAL GUARDIAN OF RENEE CEREPAK, A MINOR, v. REVLON, INC., AND ANOTHER.

200 N. W. 2d 33.

August 11, 1972—No. 42936.

*Mahoney, Dougherty, Angell & Mahoney* and *John F. Angell,* for appellant.

*Rerat, Crill, Foley & Boursier* and *David K. Wendel,* for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, and Peterson, JJ.

PETERSON, JUSTICE.

This appeal involves a products liability action by Chester Cerepak and Renee Cerepak, a minor, against Revlon, Inc., for injuries sustained from a broken bottle of Revlon's "Hi and Dri" liquid deodorant purchased at a retail store of J. C. Penney Company.[1]

The deodorant bottle, manufactured by defendant Revlon, Inc., was a roll-on bottle, 8 inches high, with a plastic cap screwed to the threaded top of the bottle. Renee had used the deodorant bottle on at least two occasions during the several weeks it was in her possession and had noticed from prior use that the cap was difficult to unscrew because the liquid deodorant was sticky. On the occasion of her injury, she made two attempts to twist the cap with her right hand, holding it waist high in her left hand, and on a third and more forceful effort than usual, the neck of the bottle broke. A tendon in a finger of her right hand was severed by the broken bottle.

Plaintiffs alleged that the bottle was defective and that defendant Revlon was negligent in its manufacture and design. The issues submitted to the jury for its special verdict related only to Revlon's negligence in the manufacture of the bottle, together with plaintiff Renee's negligence in its use. The jury found that Revlon was negligent and that plaintiff Renee was not negligent.

Plaintiffs offered no affirmative evidence of Revlon's negligence in the manufacture of the bottle. No expert testimony was offered to establish any defect in design or manufacture of the bottle. The factual issue was submitted to the jury solely under a res ipsa loquitur instruction, on the theory, stated in the trial court's post-trial memorandum, that the injured user need only show "that the bottle appeared to be a normal bottle fit for usage in a customary manner, as it should be used and as a manufacturer could foresee it would be used, and that she did not put it to an abnormal use."

---

[1] J. C. Penney Company was an original defendant, but plaintiffs' action against it was dismissed. Defendant Revlon made no objection to this dismissal. Plaintiffs have not appealed from the dismissal.

Plaintiffs' only evidence, aside from the broken bottle itself, was the testimony of plaintiff Renee and her mother as to the circumstances of its purchase and use, which was to the effect that she alone used the deodorant bottle and that at no time had she pried, bumped, or dropped the bottle. There was no evidence as to how long the bottle was in the possession of the retailer; plaintiff's mother was not sure that the retail clerk delivered it to her in a box, but she thought that it was taken from a display case and handed to her packed in tissue paper.

Revlon's evidence, on the other hand, consisted of the expert testimony of Marvin W. Dynes, manager of the Department of Glass Technology at the University of Minnesota, who had examined the broken bottle. He testified that his examination revealed no defects in the bottle but that he observed a chip out in the top surface of the bottle, corresponding to markings on the cap, which he concluded was from the insertion of some object between the top glass ledge of the bottle and the cap. Dynes was of the opinion that an attempt had been made to pry loose the cap with such object, resulting in chipping the bottle and so weakening it as to cause its breakage upon the application of little force.

Revlon had moved to dismiss at the conclusion of plaintiffs' case for failure to establish a prima facie case of negligence. The motion was denied. Revlon made a post-trial motion for amended findings of fact and conclusions of law or for a new trial. The motion was denied. This appeal is from that order.

The dispositive issue is whether plaintiffs met their burden of proof on the factual issue of negligence where the issue was submitted solely on theory of res ipsa loquitur, absent any affirmative evidence that the deodorant bottle was negligently manufactured. Plaintiffs had the burden of proving that there was a defect in the bottle which caused it to break under normal use, that this defect was present when defendant surrendered possession of the bottle to the retailer, and that the defect was the result of defendant's negligence in its manufacture. Al-

though the burden of proof has been less strict in cases of spontaneous explosion of carbonated beverage bottles, Holkestad v. Coca-Cola Bottling Co. 288 Minn. 249, 180 N. W. 2d 860 (1970), and Lee v. Crookston Coca-Cola Bottling Co. 290 Minn. 321, 188 N. W. 2d 426 (1971), than in the case of other glass containers, Kerr v. Corning Glass Works, 284 Minn. 115, 169 N. W. 2d 587 (1969), no case based on negligence has wholly removed this burden of proof or held it discharged merely by proof that the plaintiff had not mishandled the product.[2]

The reason for less strictness in adhering to this burden of proof in exploding bottle cases is more pragmatic than conceptual. Dean Page Keeton, author of *Products Liability—Proof of the Manufacturer's Negligence,* 49 Va. L. Rev. 675, 686, after reviewing some of the defective bottle cases, concludes that courts have been less strict in requiring proof of negligence in cases involving explosions of beer bottles and carbonated beverage bottles. It is his view that "the existence of a defect in a bottle cannot be inferred simply from evidence on the part of plaintiff of careful conduct coupled with an explosion or break" and that plaintiff, in order to get to the jury, must introduce "direct evidence of a defect by an expert who examined the bottle." Id. 686. "[W]ithout expert evidence of a defect," he states, "there is always the very definite probability that the whole truth has not been told as to what happened at the time of the accident." Id. 684. He suggests that requiring less proof in cases involving explosions of beer bottles or carbonated beverage bottles may be justified by the fact that often the explosion destroys the bottle, making it more difficult for plaintiff to prove that it was defective.

Our own decision in Lee v. Crookston Coca-Cola Bottling Co. *supra,* confirms Dean Keeton's last observation. The majority

---

[2] The three cases cited in the text were all decided on the theory of strict liability in tort and not on the theory of negligence. However, the reasoning as to the burden of proving a defect in the product is the same under either theory.

opinion there indicated that a fundamental reason for the res ipsa rule is "plaintiff's inability to determine the specific defect or cause, coupled with the fact that the defendant is in a better position to present evidence as to the cause of the accident." 290 Minn. 333, 188 N. W. 2d 434. The opinion stated that this reason has especial force in cases of exploding bottles or similar dangerously defective products "where the product is destroyed by reason of the defect, which is also obliterated." 290 Minn. 333, 188 N. W. 2d 434. Unlike Lee, moreover, the expert testimony as to the external force which resulted in the breakage of the deodorant bottle in the instant case was based upon objective evidence and not merely an unsupported hypothesis.

Plaintiffs delivered the broken Revlon bottle to their attorney, for it was not destroyed in the mishap. It was fully available to plaintiffs for their own expert examination and opinion. To repeat the words of Dean Keeton, "[T]he very definite probability that the whole truth has not been told as to what happened" (49 Va. L. Rev. 684) when reasonably available evidence on a critical issue is not shared with the jury militates against the uncritical resort to the doctrine of res ipsa loquitur.

The product in Kerr v. Corning Glass Works, *supra,* was a "Pyrex" glass baking dish manufactured by Corning Glass and purchased by plaintiff from a retailer. The cooking dish exploded and disintegrated when removed from a heated oven. Plaintiff had used the dish on six to eight occasions during the six months subsequent to its purchase. Her evidence established, as here, that she had not mishandled the dish. There was no testimony compelling a finding of improper handling by intermediate parties. But, as here, she produced no direct evidence that the dish was defective when manufactured and delivered to the retailer. The defendant manufacturer, as here, offered expert evidence negating a manufacturing defect, the expert being of the opinion that the explosion resulted from the heating and cooling of liquids within a bruise or fracture in the glass of unknown origin. The

case was submitted to the jury on the theory of res ipsa loquitur, and the jury returned a verdict for plaintiff.

The court in Kerr reversed and directed entry of judgment for defendant. The opinion pointed out that the object of our concern was not a bottle containing carbonated beverages but a container without regard to its contents. And then it emphasized that plaintiff introduced no evidence in the form of expert testimony that the dish was defective when it left the factory. We concluded that, since the dish had been out of the manufacturer's control from anywhere from 7 to 47 months, it was reasonable to assume that employees or prospective customers of the retailer's might have mishandled it. It was our opinion that, absent evidence by plaintiff from which a jury could find that it was defectively manufactured or that it was defective when it left defendant's factory, she had failed to sustain her burden of proof.

The circumstances in the instant case are significantly similar to those in Kerr. The accident occurred several weeks after purchase. Plaintiff introduced evidence that she had used the deodorant bottle properly and had not mishandled it. She introduced no direct evidence that the bottle was defective when manufactured or when it left Revlon. Defendant's expert, who examined the bottle, testified that there was a chip out on top of the bottle which indicated that someone had placed a foreign object under the cap in an attempt to pry it loose. There was, to be sure, no evidence as to the length of time the Revlon bottle was in the possession of the retailer, and the expert testimony tends to rule out the likelihood of mishandling by the retailer. It is unlikely, of course, that the retailer or its shoppers would have attempted to pry open a deodorant bottle while in the store. But the cases are still similar in that there was no more evidence here than in Kerr from which the jury could find that the product was defectively manufactured or that it was defective when it left the manufacturer.

Reversed with directions to enter judgment for defendant.

Mr. Justice Todd and Mr. Justice MacLaughlin, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.