ERNEST PETERSON v. CROWN ZELLERBACH CORPORATION AND ANOTHER.

209 N. W. 2d 922.

June 29, 1973—Nos. 43312, 43343.

*Reavill, Neimeyer, Johnson, Fredin & Killen* and *John J. Killen, Jr.,* for appellant Crown Zellerbach.

*Hammer, Halverson, Watters & Bye* and *Gene W. Halverson,* for appellant Paper Products.

*Applequist, Nolan, Donovan, Larson, Barnes & Mathias, Robert Magie, Yetka & Newby,* and *Lawrence Yetka,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and MacLaughlin, JJ.

PER CURIAM.

Plaintiff, operator of a meat-processing frozen-food locker business, brought this action in strict liability[1] alleging that a certain brand-name freezer meat-wrapping paper, which was manufactured and supplied by defendants, had caused an odor in the meat which he processed for his customers. The jury awarded damages of $38,000, including loss of profits and business good will. The trial court denied all of defendants' post-trial motions except defendant seller's motion for indemnification by defendant manufacturer. Both defendants appeal from the portion of the order denying their motions for new trial or judgment notwithstanding the verdict. Defendant manufacturer also appeals from the judgment and defendant seller appeals from the provisions therein for judgment against it in plaintiff's favor. We reverse and order judgment for defendants because plaintiff failed to meet his burden of proving by a fair preponderance of the evidence that there was a defect in the paper that caused the odor in the meat.

Plaintiff first began to receive complaints from his meat-processing customers in October 1969. These customers com-

---

[1] Plaintiff's complaint alleged negligence, breach of warranty, and strict liability. The case was tried and submitted on a theory of strict liability only.

plained that beef which plaintiff had processed for them had an objectionable odor which they described as sweet or musty. Plaintiff's contention at trial was that the freezer meat-wrapping paper manufactured and supplied by defendants had caused the odor. Most of the evidence introduced by plaintiff in support of his contention consisted of testimony by his customers that when they thawed the meat and removed it from the freezer paper they detected the unpleasant odor, that the paper had the odor after the meat was removed, and that they felt that the paper had caused the meat to have this odor.

Several of plaintiff's witnesses had performed what could be termed rather crude experiments in an attempt to determine whether the paper caused the odor. One woman testified that she had removed the paper from the beef and wrapped chickens with it and that the chickens got the same odor that the beef had had. A home economics teacher testified that she had conducted an experiment for plaintiff by thawing one package of beef in the paper and another with the paper removed and that the one thawed with the paper removed did not have an objectionable odor.

Michael DeSciscio testified that sometime in October 1969 he had obtained beef from plaintiff but had wrapped it himself in a different brand of paper and that this beef did not have an objectionable odor. Other beef from the same cow, but wrapped by plaintiff in defendant's brand-name paper, did have the objectionable odor. However, plaintiff himself froze the beef which he wrapped whereas DeSciscio froze in his own facilities the beef which he wrapped, and there was evidence that plaintiff had not maintained his locker freezer facilities at a temperature low enough to sufficiently retard multiplication of an odor-causing bacteria.

Plaintiff also called as witnesses a meat locker operator and a meat processor who had had complaints about the odor of defendants' freezer meat-wrapping paper. These complaints, however, related to paper manufactured either considerably earlier

or later than the paper which plaintiff claims caused the smell. Neither of the witnesses testified that he himself had used the odorous paper or that it had caused any meat to smell.

Defendants did not rest alone on plaintiff's failure of proof. They produced experts in the field of food science who testified that the cause of the odor was a bacteria common to beef, the growth of which is not sufficiently slowed when there is inadequate freezing. One of the defendants' experts testified that he had visited plaintiff's plant and found that the temperature was too warm in both the freezer quarters and the locker room. A test panel assembled by defendant manufacturer failed to detect any objectionable odor in any of the paper samples provided by plaintiff.

Plaintiff had the burden of introducing sufficient evidence to permit the jury to infer that more likely than not a defect in the paper caused the meat to smell. This burden was well stated in LaFavor v. American Nat. Ins. Co. 279 Minn. 5, 12, 155 N. W. 2d 286, 291 (1967):

"* * * The burden of proof being upon the plaintiff, it is not enough that the evidence be consistent with the theory upon which the plaintiff bases her claim. It must go further and must support it. It is never enough that it suggests a possibility. The evidence in proof must justify sound and honest inferences."

See, also, Jessen v. Schuneman's, Inc. 246 Minn. 13, 73 N. W. 2d 786 (1955); Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. 2d 243 (1951). The fact that meat wrapped in the paper smelled was not sufficient proof that the paper was defective or that it caused the meat to smell. Plaintiff had to introduce something more.

This "something more" could have taken the form of expert testimony. Although there is no hard-and-fast rule requiring plaintiff to introduce expert testimony in product liability cases, we have emphasized the importance of such testimony. See, for example, our recent decision in Cerepak v. Revlon, Inc. 294 Minn. 268, 200 N. W. 2d 33 (1972). Although defendant called a num-

ber of experts who gave testimony supporting their theory of what happened, plaintiff did not. The home economics teacher called by plaintiff hardly qualified as an expert, and her unscientific "experiment" at best proved only that the meat when thawed away from the paper did not have the same objectionable odor that it had when thawed in the paper. This, of course, may have been the result simply of the meat's having had an opportunity to air out. Significantly, plaintiff did send samples of the meat and paper to the State Department of Agriculture, whose chemists found no objectionable odor in the paper.

Nor did the "something more" take other forms. The testimony of the meat locker operator and the processor did not constitute evidence that others using the paper had met with similar misfortune. The testimony of Douglas Anderson and Michael DeSciscio, which established that meat from the same cow smelled when wrapped by plaintiff in the paper but not when wrapped by DeSciscio in other paper, proves merely that the paper could have been the cause but not that it more than likely was the cause of the odor in the meat. Because plaintiff did not introduce sufficient evidence to justify an inference by the jury that the paper more likely than not had contained objectionable odors which caused the meat wrapped therein to smell, we reverse and remand with directions to enter judgment for defendants.

Reversed and judgment ordered for defendants.