**Robert GERHARD and Sandra Gerhard, husband and wife, Plaintiffs,**

v.

**BELL HELICOPTER TEXTRON, A DIVISION OF TEXTRON, INC., and Charles Dennis Claire d/b/a Claire Flying Service, Defendants.**

**Civ. 6–89–125.**

United States District Court,
D. Minnesota,
Sixth Division.

March 25, 1991.

---

Robert Gerhard, pro se.

Timothy R. Schupp, Faegre & Benson, Minneapolis, Minn., for defendant Bell Helicopter Textron.

### ORDER

DEVITT, District Judge.

#### Introduction

This diversity action arising out of a helicopter crash is before the court upon defendant Bell Helicopter Textron's ("Bell Helicopter") motion for summary judgment. For the reasons set forth below, the court grants defendant's motion.

#### Background

Plaintiff Robert Gerhard ("Gerhard") was employed as a helicopter pilot by Claire Flying Service, an agricultural spraying business. On June 16, 1986, a helicopter piloted by Gerhard crashed and

burned during a spraying operation. Gerhard sustained serious burn injuries in the post-crash fire. Plaintiffs filed this action claiming that the helicopter was defective. Specifically, plaintiffs claim that the helicopter's "bell crank" was defectively manufactured.[1]

Officials with the National Transportation Safety Board ("NTSB") investigated the wreckage and circumstances surrounding the crash and determined that the bell crank had fractured. A metallurgist with the NTSB examined the bell crank under a binocular microscope and concluded that the fracture was "typical of ductile overstress separations."

After commencing this action, plaintiffs employed an expert metallurgist to examine the bell crank. This expert concluded that the bell crank was not defective and that the impact of the crash caused the fracture. At plaintiffs' request, the pretrial schedule was modified twice to provide plaintiffs more time to locate and employ a favorable expert metallurgist. In consideration for receiving defendant Bell Helicopter's approval for the second extension, plaintiffs agreed to dismiss their claims against Bell Helicopter if the second metallurgist retained by plaintiffs reached the same conclusion as plaintiff's first metallurgist.[2] Plaintiffs employed a second metallurgist who examined the bell crank on January 15, 1991. From his examination, the metallurgist was unable to conclude whether the bell crank was defective or sound.

The parties appeared before the court on February 25, 1991 for a hearing upon Bell Helicopter's summary judgment motion as well as plaintiffs' counsel's motion to withdraw from representation. The court granted the motion to withdraw, leaving

---

1. Plainly described, the bell crank is a component of the helicopter's control system and enables a pilot to maneuver the helicopter vertically. Plaintiffs do not appear to allege that the bell crank was defectively designed.

2. The stipulation provides, in pertinent part: [F]ollowing the depositions of plaintiffs, a metallurgical analysis will be performed by a second expert selected by plaintiffs by January 20, 1991. Plaintiffs agree to be bound by

the conclusions of said metallurgist, and further agree that if said metallurgist concludes that the fracture of the failed part was caused by overload of a non-defective part, as opposed to a defect in the condition of the part, that plaintiffs will dismiss any and all claims against Bell with prejudice, reserving all other rights against defendants Claire and Claire Flying Service.

plaintiffs without local counsel. Plaintiffs had been aware that their local counsel would seek to withdraw at least as early as November 26, 1990. However, the court granted plaintiffs an extension to Friday March 8, 1991 to respond in substance to Bell Helicopter's summary judgment motion. On March 7, plaintiffs filed, *pro se*, three affidavits, various exhibits, and a memorandum of law in opposition to defendant's motion for summary judgment.[3] On March 12, 1991, the court received defendant's brief in reply to plaintiffs' submissions. The court is prepared to address defendant's summary judgment motion without oral argument.[4]

## Discussion

Defendant Bell Helicopter contends that summary judgment is appropriate because (1) plaintiffs signed a stipulation agreeing to dismissal of their action against Bell Helicopter in the event the second metallurgist concluded that the bell crank was not defective; and (2) plaintiffs have failed to present evidence tending to show that the bell crank was defectively manufactured. Plaintiffs submit three affidavits and the NTSB brief report of the crash in an effort to raise genuine issues of material fact regarding the soundness of the bell crank.

Summary judgment is appropriate where the pleadings and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 571 (8th Cir.1988). The party opposing summary judgment may not simply rest on his pleadings. He must set forth "such facts as would be admissible in evidence," by affidavits or otherwise, which show the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Video Update, Inc. v. Guenther*, 741 F.Supp. 172, 173 (D.Minn.1990). The nonmoving party need not produce evidence in a form that would be admissible at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court must grant summary judgment where the non-moving party:

> fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.*, 477 U.S. at 322, 106 S.Ct. at 2552.

The parties appear to agree that this case is governed by Minnesota substantive products liability law. Under Minnesota law, plaintiffs must establish four elements to prevail:

> (1) that plaintiff was injured, (2) that the injury was caused by defendant's product, (3) that the injury occurred because the product was defective, and (4) that the defect was present in the product when it was sold by defendants.

*Aby v. St. Paul Union Stockyards*, 373 N.W.2d 810, 812 (Minn.Ct.App.1985), *quoting*, *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 155 (Minn.1982) (citation omitted).

Here, there is no dispute that plaintiff sustained severe injuries in the crash of a helicopter manufactured by defendant. Defendant, however, has presented evidence tending to show that the bell crank was not defective and fractured because of stress caused by the impact of the crash. To successfully oppose defendant's summary judgment motion, plaintiffs must submit evidence tending to show that the bell crank was defectively manufactured. Despite two extensions of the discovery deadline, plaintiffs have been unable to produce metallurgic testimony to support their case. Nonetheless, plaintiffs submit the following in opposition to defendant's motion: (1) the affidavit of plaintiff Robert Gerhard in which he describes the crash; (2) the NTSB investigation brief report; (3) the affidavit of Robert Gilham ("Gilham"), a metallurgist retained by plaintiffs; and (4) the affi-

---

**3.** Plaintiffs continue to be represented by Samuel R. Miserendino, an attorney licensed to practice in the state of New York. However, plaintiffs have yet to retain counsel admitted before this court.

**4.** By stipulation and order signed March 25, 1991, plaintiffs' claims against defendant Charles Dennis Claire d/b/a Claire Flying Service were dismissed with prejudice.

davit of Roger Boisjoly ("Boisjoly"), a mechanical engineer retained recently by plaintiffs.

The court has the authority to enforce settlement agreements in cases pending before it. *Gardiner v. A.H. Robins Company, Inc.,* 747 F.2d 1180, 1190 (8th Cir.1984); *Worthy v. McKesson Corp.,* 756 F.2d 1370, 1373 (8th Cir.1985). Here, the parties executed a stipulation on December 3, 1990 in settlement of various matters scheduled for hearing before United States Magistrate Franklin L. Noel on December 4. This stipulation provided expressly for the dismissal of plaintiffs' action against Bell Helicopter in the event the second expert employed by plaintiffs determined that the bell crank was not defective. Gilham, the second metallurgist eventually retained by plaintiffs, states that he attended and participated in the metallurgical testing of the bell crank performed on January 15, 1991. Gilham represents that "it was not possible [for him] to make a determination one way or the other regarding the defective or non-defective nature of the bell crank." Gilham Affidavit at ¶ 7. Though suspect[5], Gilham's failure to determine that the bell crank was not defective does not satisfy the preconditions for dismissal set forth in the settlement agreement. Concurrently, however, Gilham's inability to come to any conclusion respecting the soundness of the bell crank does not raise a genuine issue of material fact in response to defendant's motion.

Plaintiffs also rely upon the affidavit of plaintiff Robert Gerhard, in which Mr. Gerhard states:

I was flying the helicopter at the time of this incident, and I am absolutely certain that at no time prior to the actual crash did I cause the helicopter, or any part of it, including the spray booms to come in contact with the ground. I suffered a sudden, unexpected and uncontrollable loss of pitch control while I was fully airborne and nowhere near the ground; and as a result of that loss of control, the helicopter crashed. The loss of control was caused by the failure of the defective bell crank in the collective pitch control mechanism.

Gerhard Affidavit, at ¶ 6. This evidence fails to raise a genuine issue of material fact. Plaintiff's allegations mirror those already contained in the complaint. To properly oppose a summary judgment motion, plaintiffs may not "rest upon the mere allegations" contained in their pleadings. Fed.R.Civ.P. 56(e). That plaintiff's account of the crash is consistent with the theory of his claim is not sufficient to rebut expert testimony that the bell crank was not defective. *See, Peterson v. Crown Zellerbach Corp.,* 296 Minn. 438, 209 N.W.2d 922, 923–24 (1973).

In his affidavit, Gerhard also refers to a probable cause finding contained in an NTSB document entitled "Brief of Accident." According to Gerhard, the document makes "clear that the determination of the NTSB was that the crash was caused by the failure * * * of a component of the helicopter." Gerhard Affidavit at ¶ 5. NTSB conclusions regarding the probable cause of an aviation accident are not admissible as evidence in a subsequent civil action arising out of the crash. 49 U.S.C. App. § 1441(e)[6]; *Curry v. Chevron, USA,* 779 F.2d 272, 274–75 (5th Cir.1985). Plaintiffs point to no specific facts contained in the NTSB report tending to show that the

---

5. Gilham blames Bell Helicopter for his inability to determine whether the bell crank was defective, citing defendant's failure "to provide [him] with full and complete documentation with regard to the failed part." Gilham Affidavit at ¶ 7. Gilham does not describe the type of documentation necessary to complete his evaluation of the bell crank. Indeed, defendant avers persuasively that no documentation is needed to determine whether the component failed through overload (because of the crash impact) or progressive failure (fatigue). Finally, plaintiffs had not previously disputed defendant's responses to discovery requests.

6. 49 U.S.C.App. § 1441(e) provides:

No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.

bell crank was defectively manufactured.[7] Thus, the NTSB report, though its inadmissible conclusion is arguably consistent with plaintiffs' theory, does not raise genuine issues of material fact with respect to the soundness of the bell crank.

Finally, plaintiffs rely upon the affidavit testimony of an expert in mechanical engineering, Boisjoly. In his affidavit, Boisjoly avers that he has examined (1) the NTSB brief report of the crash, (2) the statement of an eyewitness to the crash, (3) aircraft specifications of the helicopter, (4) Mr. Gerhard's deposition testimony, (5) a pertinent metallurgical report, and (6) "12 NTSB Summary Briefs describing incidents involving failures of the collective and pitch control mechanisms of similar Bell helicopters." Boisjoly Affidavit, at ¶ 3(a)–(e). From this examination, Boisjoly concludes "that the crash * * * was caused by the in-flight failure of the bell crank * * * when said bell crank was subjected to an expected in-flight maneuvering load." *Id.* at ¶ 4. The amended pretrial schedule in this case required plaintiffs to disclose all expert witnesses and serve answers to interrogatories under Rule 26(b)(4)(A)(i) by November 1, 1990. The court amended the pretrial schedule a second time to extend the period for plaintiffs to disclose additional metallurgic experts to January 20, 1991. Plaintiffs submitted the affidavit of Boisjoly, a mechanical engineering expert, on March 7, 1991. Boisjoly fails to recount or explain the analysis underlying his conclusion; nor does he identify whether the alleged defect is one of design or manufacture.[8] He simply describes the materials which he reviewed and states a conclusion.

Boisjoly's affidavit, filed well after the deadline imposed by the pretrial schedule, is conclusory and lacks specific factual analysis, and is not sufficient to raise genuine issues of material fact in response to defendant's motion for summary judgment. *See, Tauber v. Nissan Motor Corporation, USA,* 671 F.Supp. 1070, 1074 (D.Md.1987); *Lee v. Baxter Healthcare Corp.,* 721 F.Supp. 89, 96 n. 3 (D.Md.1989), *aff'd.,* 898 F.2d 146 (4th Cir.1990).

Conclusion

Based upon the files, briefs, and arguments of counsel,

IT IS ORDERED that:

Defendant Bell Helicopter's motion for summary judgment is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

7. The report of the NTSB metallurgist is brief and states merely that "[t]he fracture faces of each break were examined with the aid of a bench binocular microscope and were found to be typical of ductile overstress separations." Defendant evidently interprets the term *overstress* to indicate that the separation was caused by the tremendous force of the crash and not by the stress of routine operation. Plaintiffs respond that the use of the term *overstress* indicates only that "the load or stress placed on the part was more than the part could stand." Gerhard Affidavit, at ¶ 5. Even accepting plaintiffs' interpretation of the term, the court finds nothing in the report of the NTSB metallurgist tending to show that the bell crank was defectively manufactured. Indeed, plaintiffs' interpretation of the term does nothing to refute the affidavit testimony of defendant's experts that the bell crank fractured because of the crash.

8. The court finds Boisjoly's failure to identify the nature of the defect significant. Had Boisjoly conducted a credible investigation based upon data "of a type reasonably relied upon by experts in the particular field," Fed.R.Evid. 703, he certainly would have been able to specify whether the defect was one of design or manufacture or, perhaps, both.