# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  98-1453

_____

Michael D. Trost,                              *
                                               *
      Plaintiff/Appellant,           *
                                               *  Appeal from the United States
  v.                                         *  District Court for the
                                               *  District of Minnesota.
Trek Bicycle Corporation,                      *
                                               *
      Defendant/Appellee.            *

_____

Submitted:  Oct. 20, 1998
    Filed:  December 23, 1998

_____

Before McMILLIAN, LAY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

      This products liability case arose from an accident Michael Trost had while riding a bicycle manufactured by Trek Bicycle Corporation (Trek).  Judgment was entered for Trek after the district court[1] decided that Trost had not produced sufficient timely evidence to withstand a motion for summary judgment.  Trost appeals, and we affirm.

_____

     [1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Michael Trost purchased a Trek all-terrain bicycle in 1991 and used it regularly until July 25, 1996, when he had the accident that gave rise to this action. He rode the bicycle approximately 35 miles each week during summer and ten miles weekly during winter, when he used chains on the tires to increase their traction. His rides included off-road trails and lasted up to five hours. The accident occurred as Trost was riding home from work along a path in a ditch. Suddenly the front end of the bicycle dropped precipitously. To him it felt as if the front of the bicycle had "dropped into a manhole." He was pitched over the handlebars and "knocked out," and he suffered injuries to his head, neck, and face. Later examination of the bicycle showed that the top tube of the bicycle frame had fractured near the point where it met the front steering tube. Trost claims that this fracture caused the accident.

Trost filed this action against Trek in January 1997, alleging that the bicycle was defective in design, manufacture, and warnings, that the defects caused the accident, and that Trek had breached its warranty.[2] Both sides consulted experts to prepare their cases, and the court set 1997 scheduling deadlines for disclosure of all expert witnesses by September 1, completion of expert discovery by October 1, and filing of dispositive motions by November 1. The case was to be ready for trial by December 1, 1997.

Trek moved for summary judgment on October 31, 1997, on the basis that Trost had not produced competent evidence to support his claims. The district court granted the motion, finding the opinion of Trost's expert inadmissible because it was untimely, inadequate, and based upon insufficient expertise. The district court further found that

---

[2]The district court did not give separate attention to a breach of warranty claim in its summary judgment discussion, and Trost has not raised any warranty issue in his briefing on appeal.

even if the expert opinion were considered, Trost had not established a prima facie case for any his claims.

## II.

Shortly after the accident, the bicycle was visually inspected by Lester Engel, a metallurgical engineering expert hired by Trost. Engel observed a microscopic crack which he said "could have initiated the [bicycle frame's] failure." Engel indicated that more information could be obtained by additional testing, but Trost did not request any further testing at that time. Trost hoped he could avoid spending money for more tests, and he shared Engel's observations with Trek prior to starting this action.

Gerald Bretting, an accident reconstructionist expert hired by Trek, examined the bicycle and the accident site on May 30, 1997. He prepared a report and sent it to Trek on September 22. Bretting's report disputed both Trost's historical account of the accident and his claim that the tube fracture had caused the accident.[3]

Trost received a copy of Bretting's report on September 24. At that time the deadline for expert discovery was only seven days away. Trost had nevertheless not yet obtained an expert report of his own and he had not scheduled depositions for Bretting or any Trek manufacturing or design personnel. He forwarded Bretting's

---

[3]Bretting described Trost's path in the ditch as a "drastic drop in elevation" — descending at an angle of between 25 and 30 degrees to an open pipe, with a 17.5 inch drop-off into the pipe. In his opinion, the accident was

> the result of riding a bicycle down a steep hill and impacting into a flat at the bottom of the down slope. This caused the front wheel to stop abruptly . . . caus[ing] the bicycle to overturn . . . [and] the frame to fail . . . . The failure of the bicycle is purely a result of the accident and is not the cause of the accident . . . . Trost would have sustained similar injuries regardless of [the] frame failure.

report to Engel for his review on September 30. Even though expert discovery was to be completed by October 1, Trost made no attempt to obtain an extension of the deadline. After consulting with Engel on October 23, Trost notified Trek the next day that additional testing would be performed on the bicycle. That testing was not done until November 12, forty-two days after the deadline for completion of expert discovery and twelve days after Trek had filed its motion for summary judgment.

In an affidavit dated November 13, 1997, Engel stated his opinion that a preexisting crack had initiated the frame failure, that the crack was due to metal fatigue, that the frame was not strong enough to withstand foreseeable loads,[4] that the lack of frame strength indicated a design defect, that the brazing step in the manufacturing process had lowered the fatigue strength of the frame at the fracture point, and that the "bicycle was not designed or constructed to take reasonably foreseeable fatigue stresses in the bike's normal operation at the point where the frame failure occurred." Trost submitted this affidavit to the court with his summary judgment response on November 18.

On November 25, Engel prepared a three page letter to supplement his affidavit. Trost gave the letter to Trek on November 30, sixty days after the deadline for expert discovery, and tried to present it to the district court at the December 3 hearing on Trek's summary judgment motion. The district court declined to accept the supplemental letter and stated that in deciding the pending motion it would consider only the materials submitted in advance of the hearing.[5]

_____

[4]In reaching this conclusion Engel assumed that Trost's bicycle had not been put through unforeseeable stresses.

[5]Trost subsequently filed Engel's supplemental letter with the clerk on December 18. In it Engel discussed details regarding the bicycle's condition after the accident and preexisting microscopic fatigue cracks where the top tube had been brazed. It was at this point that the fracture began, according to Engel. Using data from sources other than Trek's manufacturing process, he concluded that brazing

The district court granted Trek's summary judgment motion in a memorandum opinion and order issued on December 22, 1997. The district court ruled that Engel's affidavit[6] was inadmissable because it was untimely, did not comport with the substantive requirements of Fed. R. Civ. P. 26, and was based upon insufficient expertise. The district court then concluded that Trost had not shown a triable issue of fact on any of his claims. Even if the expert affidavit had been admissible, it failed to "raise a material issue of fact concerning either defect or causation," required elements of a products liability claim. Summary judgment was therefore granted in Trek's favor.

On appeal Trost argues that the district court erred in concluding there was no genuine issue of material fact and in excluding Engel's opinion on the basis of timeliness and insufficient expertise. Trek responds that Engel's opinion was properly rejected and that Trost failed to produce sufficient evidence to avoid summary judgment.

---

typically reduces a tube's strength about 18%, but in his opinion the strength of this tube had been reduced about 40% at the fracture origin. He concluded that the "root cause of the failure [was] improper brazing of the tube which resulted in the unusually low hardness in the tube at the fracture origin." Elsewhere in the letter, however, Engel stated that the postaccident condition of the bicycle "suggests an overload failure of the frame." The letter did not discuss the general attributes of the Trek all-terrain bicycle or the expected strength of the top tube, the intended and foreseeable loads on the top tube, or the strength required to withstand such loads.

[6]The memorandum did not mention or consider Engel's supplemental letter.

III.

A.

We review the district court's decision to exclude the opinion of Trost's expert for abuse of discretion, see Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (8th Cir. 1996), cert. denied, 117 S. Ct. 1552 (1997), and will only reverse if its decision was based on "an erroneous view of the law or a clearly erroneous assessment of the evidence," Richards v. Aramark Servs., Inc., 108 F.3d 925, 927 (8th Cir. 1997).

There is no question that the expert evidence was late. October 1, 1997 was the deadline for expert discovery, and Engel's November 13 affidavit and November 25 letter were submitted well beyond that date. "A party that . . . fails to disclose information required by Rule 26(a) . . . shall not be permitted to use [the nondisclosed information] as evidence at a trial, at a hearing, or on a motion" "unless such failure is harmless" or there was "substantial justification" for the failure. Fed. R. Civ. P. 37(c)(1). Rule 16 gives the district court the authority to set management deadlines and to impose sanctions for their violation. Fed. R. Civ. P. 16(b), (c)(5)-(7), (f). The rules thus permit a court to exclude untimely evidence unless the failure to disclose was either harmless or substantially justified. The district court specifically found that Trost's failure to disclose the evidence on a timely basis was not substantially justified and also implied that it was not harmless.

Trost argues that in fairness the district court should have considered Engel's opinion along with that of Bretting, that the untimely production of Engel's affidavit and letter was substantially justified because additional testing was required to respond to Bretting's report which had only been submitted about one week before the deadline,

and that there had been no prejudice to Trek.[7]   Trost also claims that Bretting's report should actually have been submitted by September 1, 1997, the deadline for each party to disclose all expert witnesses, because Rule 26(a)(2) provides that an expert's report must accompany the disclosure.

Trost had the burden of proof as the plaintiff.  He had to produce sufficient competent evidence to make out a prima facie case regardless of what evidence Trek might assemble.  Since failure to disclose in a timely manner is equivalent to failure to disclose, see Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995), Trost needed to produce competent evidence within deadlines set by the court or risk sanctions under Rules 16 and 37.  It is risky for a plaintiff in a products liability case to sit back and wait to see what a defense expert might say before seeking an expert report.  If Trost had a legitimate need to await Bretting's report before producing the evidence necessary to meet his burden of proof, then his proper course of action would have been to seek an extension of the deadline.  His failure to comply with the deadline was not substantially justified, and it cannot be said that it was harmless.  Trek had prepared its summary judgment motion at least partially premised on the lack of expert opinion to support Trost's claims.  Since the case was then on the court's January trial calendar, Trek would have been significantly prejudiced by the late production of Engel's opinion because of lack of time to prepare to refute the evidence at trial.   In addition, the court's trial calendar would have been disrupted if a continuance became necessary.

---

[7]Trost also argues that he made timely disclosure because he had turned over the results of Engel's initial inspection prior to filing the lawsuit.  Engel's strongest statement in that initial letter, however, had been that the preexisting crack "could have" initiated the failure.  This statement is insufficient to satisfy Trost's burden of proof so we need not consider whether the letter qualifies as a report within the meaning of Rule 26.

Because Trost's untimely expert disclosure was neither substantially justified nor harmless, it was within the power of the district court to impose sanctions under Rules 16 and 37. While we might well have decided the question of an appropriate sanction differently, we cannot say the district court's choice of sanctions was an abuse of discretion. We therefore affirm the exclusion of Engel's opinion on the basis of untimeliness and need not discuss whether his opinion conformed to other Rule 26 requirements or whether there was sufficient foundation for it.

B.

To recover in his products liability suit, Trost must establish that the bicycle was in "a defective condition unreasonably dangerous for its intended use." Bilotta v. Kelley Co., 346 N.W.2d 616, 623 n.3 (Minn. 1984) (citing Lee v. Crookston Coca-Cola Bottling Co., 188 N.W.2d 426, 432 (Minn. 1971)); accord Patton v. Newmar Corp., 538 N.W.2d 116, 119 (Minn. 1995). Other than Engel's opinion, the only evidence of defect upon which Trost relied is a res ipsa loquitur type of inference. He argued that the accident would not have happened if the bicycle had not been defective. In Minnesota res ipsa loquitur alone cannot make out a products liability case. See Cerepak v. Revlon, Inc., 200 N.W.2d 33, 35–37 (Minn. 1972). Trost's account of the accident is not "sufficient proof that the [bicycle] was defective or that it caused the [accident]. [Trost] ha[s] to introduce something more." Peterson v. Crown Zellerbach Corp., 209 N.W.2d 922, 924 (Minn. 1973). Even if a jury were to resolve historical fact disputes in Trost's favor, there would still be insufficient evidence to support a verdict for him.

Even if Trost could prove that the bicycle was in a defective condition, he would also have to show that it was unreasonably dangerous. See Kallio v. Ford Motor Co., 407 N.W.2d 92, 96 (Minn. 1987). The "reasonable care balancing test" is used in Minnesota to determine if a product was designed in a "defective condition unreasonably dangerous for its intended use." Kallio, 407 N.W.2d at 95; Bilotta, 346

N.W.2d at 621–23. "What constitutes 'reasonable care' will, of course, vary with the surrounding circumstances and will involve 'a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm.'" Holm v. Sponco Mfg., 324 N.W.2d 207, 212 (Minn. 1982) (quoting Micallef v. Miehle Co., 348 N.E.2d 571, 577–78 (N.Y. 1976) (citations omitted)). The test is an objective standard "which focuses on the conduct of the manufacturer in evaluating whether its choice of design struck an acceptable balance among several competing factors." Bilotta, 346 N.W.2d at 622. Trost has produced no information upon which to evaluate the likelihood of harm, the expected gravity of harm, or what precautions could have avoided the harm. He provided no alternative designs to show Trek could have improved the strength of the tube without sacrificing some other important quality. Since Trost did not provide any evidence upon which a jury could evaluate whether the alleged defective condition made the bicycle unreasonably dangerous, the "record taken as a whole could not lead a rational trier of fact to find for [Trost]," and summary judgment was appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV.

In summary, we conclude that the district court did not abuse its discretion in excluding Trost's expert opinion and did not err in concluding that Trost had not produced sufficient competent evidence to withstand summary judgment. The judgment of the district court is therefore affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.