**Luz Miriam TORRES, et al., Plaintiffs,**

**v.**

**MENNONITE GENERAL HOSPITAL INC., et al., Defendants.**

**Civil No. 12–1914 (GAG).**

United States District Court, D. Puerto Rico.

Dec. 19, 2013.

David C. Indiano–Vicic, Vanesa Vicens, Jeffrey M. Williams–English, for Plaintiffs.

Anselmo Irizarry–Irizarry, Benito I. Rodríguez–Masso, Ramonita Dieppa–González, Sigrid López–González, Juan M. Masini–Soler, Doris Quiñones–Tridas, Igor Domínguez–Pérez, Eliás Fernández–Pérez, Jorge J. López–López, Benjamin Morales–Del–Valle, Francisco E. Colon–Ramírez, Jose A. Gonzalez–Villamil, Jeanette Rodríguez–De León, Jeannete M. López, Juan M. Martinez–Nevarez, for Defendants.

*OPINION AND ORDER*

GUSTAVO A. GELPÍ, District Judge.

Presently before the court is Defendant Dr. Omar Nieves' (hereinafter "Defendant Nieves" or "Dr. Nieves") Motion in Limine to exclude Opinions of Dr. Carl Adams against him at Docket No. 253. After reviewing the parties' submissions and the pertinent law, the court hereby **DENIES** Defendant Nieves' Motion in Limine (Docket No. 253).

## I. Discussion

### A. *Admissibility of Dr. Adam's expert opinions*

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), vested in trial judges a gatekeeper function, requiring that they assess proffered expert scientific testimony for reliability before admitting it. The admission of expert testimony is governed by Federal Rule of Evidence 702. The First Circuit has described the trial judge as the 'gatekeeper' in applying Rule 702's admissibility criteria. *Gaydar v. Sociedad Instituto Gineco–Quirúrgico y Planificación Familiar,* 345 F.3d 15, 24 (1st Cir.2003). The judge must decide "whether the scientific, technical, or other specialized knowledge [the expert] offers will assist the trier better to understand a fact in issue." *Id.* (quoting *United States v. Alzanki,* 54 F.3d 994, 1005 (1st Cir.1995)).

*Daubert* identified four factors which might assist a trial court in determining the admissibility of an expert's testimony, however, these factors do not constitute a 'definitive checklist or test.' *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786)[1]. Given that "there are many dif-

---

**1.** The four factors established in Daubert are: (1) whether the theory or technique can be

ferent kinds of experts, and many different kinds of expertise," these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.*

■ As part of the inquiry as to the admission of expert testimony, the trial court must "determine whether the putative expert is qualified by knowledge, skill, experience, training, or education," to offer testimony. *Pages–Ramirez v. Ramirez–Gonzalez*, 605 F.3d 109, 114 (1st Cir.2010). In pertinent part, the First Circuit has explained that "[t]he proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline." *Pages–Ramirez*, 605 F.3d 109, 114 (quoting *Gaydar*, 345 F.3d at 24).[2]

First, Defendant Nieves is moving the court to disqualify Dr. Adams as an expert and exclude his opinions against him. Defendant Nieves wants the court to find that Dr. Adams is not qualified to render his expert opinion because, amongst others: (a) Dr. Adams is a cardiac surgical backup; (b) he has allegedly only worked at facilities with angioplasty programs since becoming a cardiovascular and thoracic surgeon and, therefore, lacks training and experience to treat a STEMI at a non-PCI facility (such as Mennonite Cayey); and, (c) since at least 1989, if not earlier, Dr. Adams has allegedly not had to stand in the shoes of a clinical cardiologist. For

these reasons, Defendant Nieves insists that Dr. Adams is not qualified to render opinions as to the standard of care to treat the deceased. These reasons alone to disqualify Dr. Adams to render an expert opinion in the case at bar are plainly inconsistent with the aforementioned doctrine.

■ Dr. Adams is "a witness qualified as an expert by knowledge, skill, experience, training, or education" and his opinions will aid the trier better to understand a fact in issue, i.e. if Dr. Nieves applied the proper standard of care while treating the deceased. As a licensed, board-certified cardiovascular, thoracic and board-certified trauma surgeon with over 32 years treating patients with cardiovascular disease, Dr. Adams is qualified to opine on the standard of care that should have been met by Dr. Nieves, a clinical cardiologist, in treating the deceased. Moreover, Dr. Adams' education, training, years of experience and medical qualifications are not questioned by Defendant Nieves. Thus, the court need not inquire further as to the Dr. Adams' credentials.

Considering Dr. Adam's testimony in connection with Rule 702, Daubert, and its progeny, the court finds that Dr. Nieves' contention that Dr. Adams is not qualified to render an expert medical opinion fails. Consequently, and pursuant to the broad discretionary powers awarded to the trial courts in qualification of experts, it is the opinion of the court that Dr. Adams meets

and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." *United States v. Mooney*, 315 F.3d 54, 62 (1st Cir.2002) (citing *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786).

**2.** For example, the First Circuit has held that an expert internist with a specialty in hema-

tology and oncology, was qualified to opine on the standard of care that should have been met by a gastroenterologist performing a colonoscopy. *Mitchell v. United States*, 141 F.3d 8, 15 (1st Cir.1998). Similarly, in *Gaydar*, the First Circuit found that "the mere fact that [an expert] was not a gynecologist does not mean that he was not qualified to give expert testimony regarding [the plaintiff's] pregnancy."

the necessary requirements to qualify as an expert and proffer his expert opinion.

Second, Dr. Nieves urges the court to find that certain opinions by Dr. Adams are allegedly not supported by established Guidelines and/or in the alternative, are not relevant, and thus must be excluded. "[T]he question of admissibility 'must be tied to the facts of a particular case.'" *Milward v. Acuity Specialty Products Grp., Inc.*, 639 F.3d 11, 14–15 (1st Cir.2011) cert. denied, ––– U.S. –––, 132 S.Ct. 1002, 181 L.Ed.2d 734 (2012). *See, also, Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25–26 (1st Cir.2006) (quoting *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. 1167). So, the answers must come from a case by case analysis. Expert testimony may be excluded if there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). "[T]rial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." *Milward*, 639 F.3d 11, 15; See, also, *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir.1998). The judge must ensure that an expert's testimony "'both rests on a reliable foundation and is relevant to the task at hand.'" *Pages–Ramirez*, 605 F.3d 109, 113–14 (quoting *United States v. Mooney*, 315 F.3d 54, 62 (1st Cir.2002); *Daubert*, 509 U.S. 579, 113 S.Ct. 2786).

This does not mean, however, that trial courts are empowered "to determine which of several competing scientific theories has the best provenance." *Milward*, 639 F.3d 11 (citing *Ruiz–Troche*, 161 F.3d 77, 85). "*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situa-

tion is correct." *Id.* The proponent of the evidence must show only that "the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.; See, also United States v. Vargas*, 471 F.3d 255, 265 (1st Cir.2006). The object of *Daubert* is "to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Milward*, 639 F.3d 11 (citing *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167.).

So long as an expert's scientific testimony rests upon "'good grounds,' based on what is known," *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786, it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities, *Id.* at 596, 113 S.Ct. 2786. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.; See, also Currier v. United Techs. Corp.*, 393 F.3d 246, 252 (1st Cir.2004); *Milward*, 639 F.3d 11, 15.

Contrary to Defendant's contention, Dr. Adams' testimony is not only connected by his *ipse dixit*. It is uncontested that Dr. Adams' opinion with regards to the standard of care used by Dr. Nieves while treating the deceased meets the requirements of Rule 702, Daubert and its progeny. His opinion would "assist the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID. 702. In light of the above, Plaintiffs need not prove that Dr. Adams' assessments and/or opinions of the situation at bar are correct. Dr. Adam's testimony both rests upon 'good grounds' and on a sufficiently reliable foundation based on the record and

what is known. It is also relevant to the task at hand, i.e. determining Dr. Nieves' (and Defendants') role, if any, on the demise of the deceased and if the proper standard of care was followed by Dr. Nieves (and Defendants) in treating the deceased.

Indeed, it would be an abuse of discretion to exclude testimony that would otherwise "assist the trier better to understand a fact in issue," simply because the expert does not have the specialization that the court considers most appropriate. *Pages–Ramirez*, 605 F.3d 109, 114. *See, also, Gaydar*, 345 F.3d at 24–25 (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir.1996)), or in this case, based on the specific characteristics that Defendant Nieves views as most appropriate. It would thus be rash for this court to disqualify Dr. Adams from giving his medical opinion when in fact, it would help the trier better understand the evidence and/or the pertinent facts in issue.

To conclude, the court notes that the evaluation of the weight of the evidence is an issue that rests in the province of the jury. Therefore, the court elucidates that it is not passing judgment as to Dr. Adam's bottom line opinions vis-a-vis Defendant's theories and/or opinions. However, as Defendant Nieves correctly points out at Docket No. 253 at page 5, as it pertains to Dr. Nieves, the question at bar is whether Dr. Adams is qualified to render an opinion as to the standard of care for treating the deceased patient. The court need not elaborate further. For the reasons stated above Dr. Adams meets the requirements to proffer expert testimony, and, hence may render an expert opinion in this case.

### B. *Disclosure requirements for expert opinions*

Federal Rule of Civil Procedure 26(a) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present [expert opinion and/or evidence]" and submit a detailed report including the expert's qualifications and "a complete statement of all opinions to be expressed and the basis and reasons therefore." FED.R.CIV.P. 26(a)(2)(A, B). The First Circuit has held these directives to be mandatory [...]. *Klonoski, M.D. v. Mahlab, M.D.*, 156 F.3d 255, 269 (1st Cir.1998). "[T]he required sanction in the ordinary case is mandatory preclusion." *Id.*

 Although Rule 37(c)(1)[3] is traditionally invoked to preclude expert testimony at trial, it can also be applied to motions for summary judgment (and the like). See, *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 60 (1st Cir.2001) (citing *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1007–09 (8th Cir.1998)). However, as the First Circuit has held, Rule 37(c)(1) "allows the court to admit belatedly proffered expert evidence if the proponent's failure to reveal it was either substantially justified or harmless." *Poulis–Minott v. Smith*, 388 F.3d 354, 358 (1st Cir.2004) (quoting *Lohnes*, 272 F.3d at 60).

The purpose of these disclosure rules is "to facilitate a 'fair contest with the basic issues and facts disclosed to the fullest practical extent.'" *Id.* (quoting *Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir.1992)). In turn, Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained by failing to

---

**3.** Rule 37(c)(1) enforces Rule 26(a) by providing that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence ... any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1).

unveil an expert in a timely fashion, and thereby potentially deprive a plaintiff of the opportunity to "depose the proposed expert, challenge his credentials, solicit expert opinions of his own, or conduct expert-related discovery." *Id.*

Here, Dr. Adams' medical opinion had been disclosed during the discovery period in accordance with Rule 26(a). Unlike the situation in *Lohnes* or *Trost,* Plaintiffs actually disclosed the identity of his expert, Dr. Adams, in a timely fashion. In accordance with the court's deadline for expert designations, Plaintiffs also timely provided Defendant Nieves (and other Defendants) with Dr. Adam's credentials, expert designations and the medical opinion he had formed based on the preliminary review of the medical records, studies and deposition testimonies of the treating physicians, hospital administration and staff.

The issue here is not that Dr. Adam's opinions were entirely new and unannounced, but rather whether any new opinions were included when Dr. Adams was deposed by Defendant Nieves that were allegedly not included in the opinion statement as required by Rule 26. Defendant Nieves was not deprived of the opportunity to depose Dr. Adams and challenge his credentials, solicit opinions of his own or conduct expert-related discovery. It is uncontested that Defendant Nieves had had the opportunity to depose Dr. Adams. In fact, Defendant Nieves was present during the deposition. The scope of Dr. Adams' medical opinions was provided to Defendant Nieves in the form of his written statement. So, Defendant Nieves was equipped with the required information relating to Dr. Adams' opinions and testimony. More importantly, Plaintiffs did not benefit from any unfair tactical advantage with respect to Dr. Adams expert opinion.

Furthermore, Defendant Nieves requests the court to disallow certain opinions given by Dr. Adams during his deposition because allegedly they were not disclosed in the Rule 26 report. Interestingly enough, Defendant Nieves admits that such opinions were provided by Dr. Adams during his deposition because "counsel for Dr. Nieves did ask questions to attempt to explore this opinion". (*See* Docket No. 253 at page 15, 18). Defendant Nieves' argument proves a slippery slope. Inasmuch as it was Dr. Nieves' defense itself who opened the door to questions about certain medical opinions of Dr. Adams by its own line of questioning, such opinions by Dr. Adams were provided because Defendant Nieves himself solicited them during the deposition. In other words, these opinions by Dr. Adams were offered as a direct result of Defendant Nieves' line of questioning that opened the door to Dr. Adams' opinions. Defendant Nieves is thus impeded from arguing that Dr. Adams' opinions (given because Dr. Nieves' counsel inquired about them) should be disallowed when it was Defendant Nieves himself who asked the very same questions that led to such opinions.

In view of the above, the purpose of the expert disclosure rules has been met. As such, and because they are sufficiently reliable under the Daubert test, and are deemed relevant, there are no sufficient grounds to exclude the challenged opinions by Dr. Adams that allegedly had not been disclosed prior to his deposition.

## II. Conclusion

For all the reasons discussed herein, the court **DENIES** Defendant Nieves' Motion in Limine to Exclude Opinions of Dr. Carl Adams against Dr. Omar Nieves at Docket No. 253.

**SO ORDERED.**