# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1371

_____

| | | |
|---|---|---|
| Angela Wegener, Mother, Guardian and next friend of Noah Wegener, | * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Nebraska. |
| Dean E. Johnson, | * * * | |
| Appellee. | * | |

_____

Submitted: December 14, 2007
Filed: June 6, 2008

_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Angela Wegener (Wegener), guardian and next friend of her son Noah Wegener (Noah), appeals from the judgment in a medical malpractice case against Dr. Dean E. Johnson. Wegener argues that the district court[1] erred by excluding supplemental testimony from one of Wegener's experts and by directing the jury to reread existing instructions instead of giving a supplemental instruction. We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I. Background

Following approximately a month of severe abdominal pain and vomiting, Wegener, who was twenty-eight-weeks pregnant, was admitted to Columbus Community Hospital (Columbus) in an incoherent state on June 3, 1997. At the time of her admission, she was dehydrated and many of her blood test values were elevated. Most notably, her calcium was at a life-threatening level. Two days later, Wegener was transferred to Methodist Hospital in Omaha (Methodist), where she delivered Noah prematurely and her gallbladder was removed. Noah developed cerebral palsy.

On July 28, 2004, Wegener filed suit on Noah's behalf against Johnson, her obstetrician, claiming that he failed to meet the applicable standard of care, which resulted in Noah's cerebral palsy. In her case-in-chief, Wegener advanced the theory that her health conditions that led to Noah's premature birth were primarily caused by gallbladder disease and resulting pancreatitis. Johnson's defense offered the alternative theory that Wegener's health conditions were primarily caused by her ingestion of an off-label dosage of over-the-counter calcium carbonate antacids.

The trial was delayed several times. The district court's progression order was filed on January 24, 2005, and initially scheduled the trial for November 14, 2005. The district court extended the deadline to disclose initial expert witness reports on Wegener's motion and granted Wegener another extension to complete the reports. On the parties' joint motion, the progression order was amended to accommodate the extended discovery period and the trial was rescheduled for February 6, 2006. The trial was rescheduled three more times, twice at the behest of the parties and once of the district court's accord. Trial began on October 3, 2006.

The jury returned a verdict in Johnson's favor, and the district court entered judgment on the verdict, rejecting Wegener's motion for a new trial.

## II. Analysis

A.    Exclusion of Supplemental Expert Testimony

On September 15, 2006, two-and-a-half weeks before trial was scheduled to begin, Wegener attempted to supplement her expert witness disclosures with additional testimony from her previously disclosed expert witness Dr. Bruce Halbridge that interpreted ultrasounds taken at both Columbus and Methodist hospitals and concluded that they showed gallstones in Wegener's gallbladder. Johnson moved to exclude the testimony as untimely filed.  The district court ruled that Wegener could not present the testimony in her case-in-chief, but postponed ruling with respect to its use for rebuttal until after Johnson had presented his defense. The district court ultimately rejected Wegener's offer of proof for purposes of rebuttal.

Wegener offers two arguments in support of her contention that the district court erred by excluding Dr. Halbridge's supplemental testimony: first, that the testimony was admissible as impeachment or rebuttal evidence; and second, that exclusion was not the appropriate remedy for violation of the applicable discovery rules.  We address each of these arguments in turn, reviewing the district court's exclusion of the evidence for a clear and prejudicial abuse of discretion.  We will reverse only if the district court's ruling was based on "an erroneous view of the law or a clearly erroneous assessment of the evidence" and affirmance would result in "fundamental unfairness." Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004) (internal quotations omitted).

### 1. Timeliness of Supplemental Expert Disclosure

The parties do not dispute that Wegener's disclosure did not comply with the deadline imposed by Federal Rule of Civil Procedure 26(e) for disclosing

supplemental expert testimony to be used in her case-in-chief. Wegener contends, however, that the district court erred by failing to admit the testimony as impeachment or rebuttal evidence. We hold that, even if it were offered in impeachment or rebuttal, Wegener was required to disclose Dr. Halbridge's supplemental testimony under Rule 26 and she failed to do so in a timely manner.

### a. Required Disclosure of Expert Testimony Used to Contradict

Rule 26 does not require the disclosure of evidence used solely for impeachment purposes. See Fed. R. Civ. P. 37(c) advisory committee's note (1993). The district court did not err by concluding that Rule 26(a)(2) required disclosure of Dr. Halbridge's supplemental testimony, however, because it is not impeachment evidence of the kind exempted from disclosure. Impeachment is "an attack on the credibility of a witness." Sterkel v. Fruehauf Corp., 975 F.2d 528, 532 (8th Cir. 1992). To attack the credibility of witnesses by the presentation of evidence showing that facts asserted or relied upon in their testimony are false is to impeach by contradiction. 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6096 (1990). It does not impeach, however, to show that an expert's opinion about the meaning of facts merely differs from that of other experts. See Kennemur v. California, 184 Cal. Rptr. 393, 402 (1982). It is often difficult to distinguish between foundational facts and expert opinion, and so to distinguish between impeachment and substantive evidence, see id. at 403, but Rule 26(a)(2)(C)(ii) resolves the dilemma in favor of disclosure by requiring parties to disclose expert testimony offered to contradict the expert testimony of the opposing party. Because Wegener offered Dr. Halbridge's supplemental testimony to contradict the testimony of Johnson's experts, she was required to disclose it.

b. Timeliness of Expert Disclosure for Rebuttal Purposes

The district court also did not err in declining to admit Dr. Halbridge's supplemental testimony as rebuttal evidence. Wegener contends that Dr. Halbridge's supplemental testimony was admissible to rebut Johnson's experts' assertion that Wegener's hospital records as a whole indicate that no gallstones were present in Wegener's gallbladder. Wegener also argues, more specifically, that the supplemental testimony was admissible to rebut the supplemental report of Johnson's expert Dr. West, which was disclosed on September 6, 2006. We disagree, for Dr. Halbridge's supplemental testimony was untimely disclosed and was not offered in true rebuttal.

The district court's progression order of January 24, 2005, set forth the deadlines for, *inter alia*, depositions and the disclosure of initial and rebuttal expert witness reports. See Fed. R. Civ. P. 16(b)(3)(B)(i), 26(a)(2)(C) (district court may set time limits for disclosure of initial and rebuttal expert witness testimony). Although the district court changed the dates for the initial expert witness reports and depositions on Wegener's motion and the trial was rescheduled four times, the January 24, 2005, order set the deadline for rebuttal expert reports to be "fifteen (15) days prior to the date set for the completion of depositions." Final Progression Order at 2 (original emphasis omitted). The final deposition deadline set by order of the district court was September 1, 2006. Therefore, Wegener's September 15, 2006, disclosure of Dr. Halbridge's supplemental testimony was untimely as a rebuttal expert disclosure.

Wegener's argument that Dr. Halbridge's supplemental testimony rebuts the supplemental report of Johnson's expert Dr. West does not excuse its untimeliness. Dr. Halbridge's supplemental testimony did not rebut any new information disclosed in Dr. West's supplemental report. Dr. West stated in both his initial and supplemental reports that neither Wegener's medical records as a whole nor the Columbus hospital ultrasounds provided evidence of gallbladder disease. Wegener

-5-

argues that Dr. West's initial opinion relied exclusively on the radiologist's report interpreting the ultrasound and that because Johnson's counsel had subpoenaed Wegener's ultrasound records in the time between Dr. West's initial report and his supplemental report, the opinion contained in his supplemental report was based on the ultrasound film itself and was, therefore, new. Our review of the record does not reveal that Dr. West's supplemental report was, in fact, based on the ultrasound films. The supplemental report does not list the films in the documents reviewed, nor does the report specifically refer to them at any point. As a basis for comparison, the list of documents reviewed does include microscopic slides of Wegener's gallbladder, Dr. West's independent reading of which is discussed in his report. Furthermore, Dr. West testified at trial that his opinion was not based on the ultrasound films, but on the radiologists' reports. We therefore conclude that Wegener's disclosure of Dr. Halbridge's supplemental testimony was untimely and that it was not offered solely to rebut any new information contained in Johnson's supplemental disclosures.

2. Remedy for Untimely Disclosure of Expert Testimony

Wegener argues that the district court should have employed a less-restrictive remedy, such as a continuance, instead of excluding her untimely disclosed evidence. When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case. Fed. R. Civ. P. 37(c)(1); Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose"). The district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony. Sellers v. Mineta, 350

F.3d 706, 711-12 (8th Cir. 2003); see also Marti v. City of Maplewood, 57 F.3d 680, 683 (8th Cir. 1995) (setting forth a variety of possibly relevant factors).

We note, however, that the district court's discretion narrows as the severity of the sanction or remedy it elects increases. See Heartland Bank v. Heartland Home Fin., Inc., 335 F.3d 810, 817 (8th Cir. 2003) (where exclusion of evidence was tantamount to dismissal of claims, the district court should have considered lesser sanctions); Laclede Gas Co. v. G.W. Warnecke Corp., 604 F.2d 561, 565-66 (8th Cir. 1979) (drastic sanctions, such as dismissal, require a finding of willfulness, bad faith, or fault on the part of the noncompliant party). Though "the exclusion of evidence is a harsh penalty and should be used sparingly," ELCA Enters. v. Sisco Equip. Rental & Sales, 53 F.3d 186, 190 (8th Cir. 1995); see Bergfeld v. Unimin Corp., 319 F.3d 350, 355 (8th Cir. 2003), we hold that the district court's election of that remedy was within the bounds of its discretion in the circumstances of this case. Wegener's failure to disclose Dr. Halbridge's supplemental testimony in a timely manner was neither substantially justified nor harmless, a continuance would have postponed a much-delayed trial, and the testimony was offered to prove a point upon which a substantial amount of other evidence was presented to the jury.

Wegener argues that her disclosure was untimely because Dr. Halbridge's supplemental report responded to Dr. West's supplemental report, which her counsel suspected was based on his review of ultrasounds that the defense had subpoenaed from the hospitals. Because we have concluded that Dr. Halbridge's supplemental testimony was not true rebuttal evidence, we hold that this argument does not substantially justify its untimely disclosure. Furthermore, Dr. Halbridge's supplemental testimony was based on hospital records that were easily discoverable, patently relevant to Wegener's case, and which Wegener's counsel knew the defense had subpoenaed five months prior to the disclosure deadline. Wegener's failure to exercise due diligence with respect to her expert's review of relevant medical records

also does not substantially justify her untimely disclosure.  See Trost, 162 F.3d at 1008.

The untimeliness of Wegener's disclosure also was not harmless with respect to Johnson's preparation for trial and the district court's trial schedule.  See id. at 1008-09. Wegener contends that her untimely disclosure did not prejudice Johnson because his counsel had subpoenaed the ultrasounds months before and had already disclosed experts who were capable of reading ultrasounds.  Though Johnson may not have been surprised by the potential for the ultrasounds to be interpreted in Wegener's favor, he still may have been surprised by the untimely disclosure of the opinion as evidence and of Dr. Halbridge as the opinion's source.  Counsel's preparation for the cross examination or possible rebuttal of an expert witness on a matter of expertise can be extensive.  Dr. Halbridge's qualifications for reading upper-abdominal ultrasounds were not readily apparent, and it may have been in the interest of justice to allow Johnson to depose Dr. Halbridge to explore his qualifications and the basis for his interpretation of the ultrasound.  The district court could well have concluded that the two-and-a-half weeks remaining before trial would not have provided sufficient time to prepare a rebuttal and cross examination involving expert testimony. Thus, had the district court admitted Dr. Halbridge's supplemental testimony, it might have been necessary to grant Johnson a continuance and further disrupt the district court's trial calendar.

Finally, Dr. Halbridge's supplemental testimony, though relevant, was not that important to Wegener's case because it was offered to prove a point in support of which a substantial amount of other evidence was presented to the jury.  See, e.g., Wood v. Valley Forge Life Ins. Co., 478 F.3d 941, 946 (8th Cir. 2007) (exclusion of coroner's opinion as to cause of death in a life insurance case was harmless where the same conclusion was offered by another expert); Charles Woods Television Corp. v. Capital Cities/ABC, Inc., 869 F.2d 1155, 1162 (8th Cir. 1989) (exclusion of evidence not prejudicial where party seeking to admit evidence had presented substantial other

proof of same point). Dr. Halbridge's supplemental testimony was offered to show that gallstones were present in Wegener's gallbladder. Wegener's theory of the case centered on a diagnosis of gallbladder disease and thus required evidence of gallstones and/or sludge in her gallbladder. Wegener's case-in-chief presented a variety of evidence from Wegener's hospital records that gallstones may have been present in her gallbladder. Multiple witnesses testified that the radiology reports from Methodist indicated that gallstones may have been present; a pathologist from Methodist testified that the chief pathologist who had examined Wegener's gallbladder concluded that she suffered from gallbladder disease and introduced the pathology report into evidence; and the surgeon who removed Wegener's gallbladder testified that she had diagnosed Wegener with gallbladder disease based on the Methodist radiology report, Wegener's symptoms, and her observation of the gallbladder at the time of its removal.

We conclude that the district court did not abuse its discretion in excluding the proposed testimony. In any event, any error in excluding it would have been harmless for the reasons detailed above with respect to the testimony's relative lack of probative value. Therefore, we affirm the district court's exclusion of Dr. Halbridge's supplemental testimony.

B.    Supplemental Jury Instructions

During deliberations, the jury requested that the district court clarify its instructions, asking, "Do we have to come to an unanimous decision or simple majority of one or more of the 5 claims set forth under instruction #5 Part A. in order to move on to Part B #2." Part A of Instruction No. 5 discussed five ways in which Wegener claimed Johnson was negligent. Part B discussed Wegener's burden of proof and stated, in pertinent part, that Wegener must prove the following by a preponderance of the evidence:

1. That Dr. Johnson was negligent as a professional in one or more of the ways set forth in section A of this Instruction;
2. That Dr. Johnson's professional negligence was the proximate cause of injury to Noah Wegener;
3. That Noah Wegener sustained damages; and
4. The nature and extent of those damages.

Part C of Instruction No. 5 stated, "If Angela Wegener has <u>not</u> met this burden of proof, then your verdict must be for Dr. Johnson.  On the other hand, if Angela Wegener <u>has</u> met this burden of proof, then your verdict must be for Angela Wegener." Instruction No. 11 discussed, *inter alia*, the requirement that "[t]he verdict must be unanimous."

At a telephone conference with counsel for both parties, the district court proposed one of the following two responses: "Please reread Instructions No. 5 and No. 11," or "It is your verdict that must be unanimous."  Counsel for Johnson requested that the district court give the former instruction; counsel for Wegener requested the latter. The district court directed the jury to reread Instructions No. 5 and 11.

Wegener argues that the district court erred by directing the jury to reread existing Instructions Nos. 5 and 11 instead of giving a supplemental instruction.  We review for abuse of discretion a district court's decision with respect to the amplification or supplementation of jury instructions.  <u>Jackson v. City of Little Rock</u>, 26 F.3d 88, 91 (8th Cir. 1994).

It is the district court's duty to instruct the jury on the applicable law.  <u>Thomlison v. City of Omaha</u>, 63 F.3d 786, 790 (8th Cir. 1995).  If the jury "'requests further instructions on the law applicable to an important issue, the trial judge is required to provide the jury with such supplemental instructions as may be necessary to guide it in the determination of the issue.'"  <u>Swift v. R.H. Macy's & Co.</u>, 780 F.2d 1358, 1361 (8th Cir. 1985) (quoting <u>Walsh v. Miehle-Goss-Dexter, Inc</u>, 378 F.2d 409, 415 (3d

Cir. 1967)). If the instructions that have been presented to the jury are accurate, the district court has broad discretion as to what supplementation, if any, is necessary. United States v. Bayer, 331 U.S. 532, 536 (1947); Victorian House, Inc. v. Fisher Camuto Corp., 769 F.2d 466, 470 (8th Cir. 1985).

Wegener does not dispute that the instructions provided to the jury were accurate. Instead, she argues that the district court abused its discretion by directing the jury to reread existing Instructions Nos. 5 and 11 because the instructions were inadequate to guide the jury to a lawful determination of the issue. We disagree. Instructions Nos. 5 and 11 were based on model instructions from the Nebraska and Eighth Circuit courts, respectively. The district court's response focused the jury on the pertinent instructions and asked it to read them together. The jury did not express any difficulty after receiving the district court's direction and did not request further clarification of the issue before returning a verdict for Johnson. See Jackson, 26 F.3d at 91. Furthermore, the supplemental instruction that Wegener's counsel preferred is no more or less objectively clear than the repeated instructions.

The judgment is affirmed.

_____