# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 23-3739

———————————————

E&I Global Energy Services, Inc.; E&C Global, LLC

*Plaintiffs - Appellants*

v.

Liberty Mutual Insurance Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of South Dakota - Southern

——————————

Submitted: October 22, 2024
Filed: April 4, 2025

——————————

Before LOKEN, SMITH, and GRASZ, Circuit Judges.

——————————

SMITH, Circuit Judge.

E&I Global Energy Services, Inc. and E&C Global, LCC (collectively, "Plaintiffs") sued Liberty Mutual Insurance Company (Liberty), alleging several breach-of-contract and tort claims arising from Liberty's promise to pay E&C for the completion of a construction project from which Plaintiffs were eventually

terminated. The district court[1] granted summary judgment for Liberty on Plaintiffs' unjust enrichment claim, and after a bench trial, the district court found in Liberty's favor on all remaining claims. On appeal, Plaintiffs argue that the district court erred in (1) denying Plaintiffs' untimely request for a jury trial; (2) excluding an expert witness report filed after the expert report deadline; (3) finding that there was no evidence of an assignment of rights between E&C and E&I under the completion contract; (4) holding for Liberty on their fraud, deceit, and negligent misrepresentation claims; and (5) granting summary judgment for Liberty on their unjust enrichment claim. We affirm.

## I. *Background*

The United States, through the Western Area Power Administration (WAPA), contracted with Isolux to build the VT Hanlon Substation in Montrose, South Dakota. Liberty and the Insurance Company of the State of Pennsylvania (ISOP) (collectively, "Sureties") issued a performance bond that guaranteed Isolux's performance and a payment bond that guaranteed Isolux's payment to its subcontractors and suppliers.

Jeff Bruce owns E&I and E&C, two distinct legal entities with different business operations. Isolux approached Bruce for help on the substation project. Upon agreement, E&I became a subcontractor of Isolux. In June 2016, E&I arrived onsite with supplies and equipment. Bruce testified that he found the project in disarray; he arrived on site with no plans, disks, drawings, or specifications. He viewed the project's viability as uncertain.

In December 2016, WAPA terminated Isolux for failure to complete the project by the completion date. This termination triggered Liberty's performance bond. Liberty, in search of a new completion contractor, hired Professional Construction Consulting (PC2) to investigate the project. David Mattingly, the PC2

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

-2-

vice president, visited the project site. Bruce introduced Mattingly to the project, gave Mattingly a tour, and showed Mattingly construction issues. Mattingly also met with WAPA representatives, including Jonathan Dittmer, WAPA's contracting officer. Dittmer gave Mattingly four CDs with project information. The first CD contained drawings, specifications, and solicitations, which were then available online. The second CD contained aerial pictures of the site that lacked information about the materials onsite. The third and fourth CDs contained project submittals.[2]

After the visit, Mattingly, Bruce, and the PC2 president negotiated a completion contract in which the Sureties tendered E&C as the completion contractor to WAPA. During these negotiations, Bruce received documents and information, including a bill of materials that Bruce used to prepare his initial bid. Before the parties signed the completion contract but after E&C submitted some bids, Mattingly sent Bruce an email that said, "Jeff, [t]hese are the drawings that Jonathan [Dittmer] provided to me. Jonathan indicated they include all of the revisions to date." R. Doc. 108-1, at 1. However, Mattingly did not give Bruce the four CDs. Mattingly testified that he believed Bruce had the submittals and that the contents of the first CD were available online. He also thought that Bruce had other documents and a good understanding of the project.

Bruce testified that he knew he was missing documents when negotiating the completion contract but bid anyway at WAPA's direction. Bruce also testified that when he signed the completion contract, he noticed that the agreement listed E&C, his other company, as the completion contractor and asked Dittmer to change it to E&I, the correct company. Dittmer told him "not to worry" and that he would print a new document. R. Doc. 112, at 536. The agreement language was never corrected.

On March 28, 2017, the Sureties, E&C, and WAPA signed a tender agreement in which the Sureties tendered E&C to WAPA. This agreement fulfilled the Sureties'

---

[2]"[S]ubmittals are documents that a contractor submits to an engineer or architect to confirm the contractor fully and accurately understands the various aspects of a project." R. Doc. 118, at 10.

obligation under the performance bond but not the payment bond. The next day, the Sureties and Plaintiffs executed the completion contract that listed E&C as the completion contractor and E&I as a subcontractor. Under the agreement, E&C would finish the project, and Liberty promised to pay E&C the completion price. Liberty also promised to pay E&C for certain items excluded from the completion price. The completion contract had a non-assignment clause that said E&C had "no right to assign any of its rights or obligations hereunder without the prior written consent of [WAPA] and Sureties." R. Doc. 108, at 149. On April 23, 2017, WAPA and E&I executed a follow-on contract in which E&I promised to complete the project.

Ultimately, E&I acted as the completion contractor because E&C could not obtain a bond required by the contract. In July 2017, Bruce sent Liberty a letter stating that Liberty owed E&I money under the completion contract for items excluded from the completion price. Carolyn Banks, a senior claims specialist at Liberty, responded in September 2017 and denied that Liberty owed E&I money. In this letter, Banks noted that the Sureties "tendered E&I, as completion contractor, to WAPA." R. Doc. 109-1, at 769. Banks wrote on behalf of Liberty and ISOP, but ISOP did not sign the letter. In May 2018, WAPA terminated E&I for failure to complete the project by the completion date.

In February 2020, Plaintiffs sued Liberty for (1) breach of the completion contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) fraud and deceit, and (5) negligent misrepresentation.

## A. *Jury Trial Demand*

The original complaint did not include a jury trial demand. In May 2020, Plaintiffs filed a discovery report with the district court. The discovery report acknowledged that the Plaintiffs failed to request a jury trial, said that they would file a motion under Federal Rule of Civil Procedure 39(b) to request a jury trial, and represented that Liberty would not oppose that motion. Plaintiffs, however, never

filed a Rule 39(b) motion. They did file a second amended complaint in late 2021, but that complaint also did not include a jury demand.

In September 2022, the district court entered a scheduling order that set a jury trial date. In December 2022, Liberty, the defendant, filed a motion requesting that the court correct the scheduling order to reflect a bench trial because neither the original nor amended complaint included a jury trial request. Plaintiffs filed a motion in opposition arguing that the court should grant a jury trial because Liberty previously agreed not to oppose their motion for a jury trial. In their motion, Plaintiffs noted that Liberty referenced a jury trial several times throughout the litigation. They also contended that Plaintiffs' omission should be excused because of the COVID-19 pandemic. Plaintiffs later separately filed the original proposed Rule 39(b) motion. The district court granted Liberty's motion to correct the order to set the case for a bench trial. The court concluded that Plaintiffs failed to timely request a jury trial and did not timely file the Rule 39(b) motion. The court also noted that Plaintiffs did not justify the delay nor did they show prejudice.

On the first day of the bench trial, Plaintiffs orally sought reconsideration of the court's decision to proceed with a bench trial. The district court denied the motion. After the bench trial, Plaintiffs again filed a motion for reconsideration of the jury trial issue, which the court also denied. The court noted that Plaintiffs' opposition to Liberty's motion to correct was arguably not a Rule 39(b) motion but still construed it as such. The court rejected Plaintiffs' COVID-19 excuse because the pandemic failed to justify the substantial delay. In fact, Plaintiffs made numerous other filings during the height of the pandemic. The court also rejected Plaintiffs' argument that Liberty should be estopped from arguing that Plaintiffs waived their right to a jury trial. Plaintiffs relied on Liberty's consent to the Rule 39(b) motion, which was given over two years prior, and highlighted Liberty's counsel's references to a jury trial in some filings and discussions with Plaintiffs. The court viewed these reasons as invalid bases for excusing Plaintiffs' failure to timely submit a jury demand.

## B. *Expert Report*

Plaintiffs' deadline to file their expert witness reports was July 7, 2021. Supplementations to those reports were due 20 days before trial. On June 7, 2021, Plaintiffs timely served Liberty with Aaron Raddock's expert report. On December 15, 2021, Plaintiffs served Liberty with Raddock's "Supplemental Report" that provided an additional $3.69 million of damages that E&I suffered in "loss of enterprise value . . . in addition to the damages calculated in my Expert Report dated June 7, 2021." R. Doc. 49-5, at 4. Liberty filed a motion to exclude this additional expert report as untimely. Upon review, the district court excluded the titular Supplemental Report as an untimely new report, not a qualifying supplemental report.

In reaching its decision, the district court applied *Wegener v. Johnson*, 527 F.3d 687 (8th Cir. 2008). In *Wegener*, we rejected the plaintiff's argument for reversal of the district court's exclusion of her expert witness report because of untimeliness. *Id.* at 692. The court in *Wegener* noted the prejudice to the opposing party for the plaintiff's untimely disclosure of an expert's supplemental testimony even if it was limited to impeachment or rebuttal evidence. *Id.* at 693. We also instructed district courts to consider a non-exhaustive list of factors when fashioning a remedy for untimely disclosure of an expert report: "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* at 692.

Here, the district court followed *Wegener*'s guidance. First, the court concluded that Plaintiffs' reason for noncompliance favored exclusion because Plaintiffs had the information on loss of enterprise damages when they submitted the first report. Second, the surprise and prejudice to Liberty favored exclusion because Liberty would have to devote significant time and resources investigating the claims in the new report. Third, trial disruption favored inclusion because a trial date was not yet set. And fourth, the importance of the testimony favored exclusion because Plaintiffs alleged other damages, and this supplemental evidence was not needed to

seek them. Further, though Plaintiffs requested a lesser sanction—to reopen discovery and allow Liberty to depose Raddock—the court rejected that request to avoid unjustified trial delay. In sum, the court found the failure to file the report was neither substantially justified nor harmless.

C. *Summary Judgment and Bench Trial*

The district court entered partial summary judgment in favor of Liberty on Plaintiffs' unjust enrichment claim. The court said that unjust enrichment is an equitable remedy that applies when there is no valid, enforceable contract. However, Plaintiffs pleaded that there was a valid contract between E&I, E&C, and Liberty, and "Liberty admitted there was a contract." R. Doc. 60, at 33. As a result, the court found that unjust enrichment was not applicable.

The district court held a bench trial in February 2023 and found Liberty not liable on all remaining claims. First, the court held that Liberty was not liable for breach of contract to E&I because Liberty's promise to pay was to E&C, the completion contractor, not E&I, and there was no evidence showing an assignment of E&C's rights to E&I. Liberty was also not liable to E&C because Plaintiffs' claimed damages were to E&I, not E&C. For these reasons, the court also denied Plaintiffs' claim for contractual breach of the implied covenant of good faith and fair dealing.

Second, the court held that Liberty was not liable for fraud and deceit. Plaintiffs claimed that Liberty misled them regarding what equipment and supplies Bruce should include in his bid, but Plaintiffs failed to show a false statement about the equipment status. Even if there was a false statement, the court found that there was no intent to deceive because Mattingly believed that Bruce had the information. Plaintiffs also claimed that Liberty intentionally withheld project drawings from the CDs, and the court found that Mattingly recklessly made a false statement in his email to Bruce. However, there was no intent to deceive because Mattingly testified that he thought Bruce had the drawings, which was supported by evidence that those drawings were online. Plaintiffs also claimed that Liberty withheld 533 pages of

schematics, but the district court rejected this argument because Mattingly did not have those documents when he emailed Bruce.

Third, the court held that Liberty was not liable for negligent misrepresentation. Again, the court found no intent to induce Bruce's reliance on his statements because Mattingly testified that he thought Bruce already had access to the information on the CDs. Further, the court found that Bruce did not reasonably rely on Mattingly's statements. Although Mattingly testified that it would be reasonable for Bruce to rely on his statements, the court disagreed. Bruce knew the project was in disarray, introduced Mattingly to the project, gave Mattingly a tour of the site, informed Mattingly of construction issues, and signed the completion contract knowing that he was missing documents.

After trial, Plaintiffs filed a motion to reconsider all four claims, which the district court denied in its entirety. The court reiterated most of its findings from its order following the bench trial. In fact, the court emphasized that, "[i]n addition to the reasons set forth in the original factual findings, the court makes explicit what was implicit in its original finding: the court credits Mattingly's testimony based on his credible demeanor while on the stand." R. Doc. 133, at 5.

Plaintiffs timely appealed five of the trial court's orders: (1) denial of their motion for jury trial; (2) exclusion of their expert's report; (3) rejection of their breach-of-contract claim; (4) rejection of their fraud, deceit, and negligence claims; and (5) rejection of their unjust enrichment claim.

## II. *Discussion*

"After a bench trial, we review legal conclusions de novo and factual findings for clear error." *Est. of Smith by Smith v. Primerica Life Ins. Co.*, 54 F.4th 550, 557 (8th Cir. 2022) (emphasis omitted). "Under the clearly erroneous standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite

and firm conviction that an error was made." *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (internal quotation marks omitted).

## A. *Denial of a Jury Trial*

Parties requesting a jury trial must do so "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b)(1). "Issues on which a jury trial is not properly demanded are to be tried by the court." Fed. R. Civ. P. 39(b). However, a district court "may, on motion, order a jury trial on any issue for which a jury might have been demanded." *Id.* "A district court's denial of a jury trial is reviewed for an abuse of discretion." *Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1011 (8th Cir. 2002).

Plaintiffs did not request a jury trial in any pleading. Plaintiffs' last pleading was the second amended complaint, which was filed in November 2021. Although the discovery report filed in May 2020 said that Plaintiffs would file a Rule 39(b) motion to request a jury trial that Liberty would not oppose, Plaintiffs did not file that motion before the close of pleadings. In December 2022, once the pleadings were closed, Liberty then moved to correct the court's scheduling order setting a jury trial date, and Plaintiffs opposed. The district court granted Liberty's motion to correct and denied Plaintiffs' request for a jury trial.

The district court did not abuse its discretion in denying Plaintiffs' request for a jury trial. This case is similar to *Littlefield v. Fort Dodge Messenger*, where we found that a district court did not "abuse[] its discretion in failing to grant a jury trial when a belated request was made for one at the pretrial conference." 614 F.2d 581, 585 (8th Cir. 1980). There, the plaintiff "offer[ed] no justification for the failure to make an appropriate demand other than inexperience, and he point[ed] to no prejudice resulting from denial." *Id.* Like *Littlefield*, we are unpersuaded by Plaintiffs' justifications for not timely filing their jury trial request.

First, Plaintiffs argue that their error should be excused[3] because the motion "simply fell through the cracks" during the COVID-19 pandemic. Oral Arg. at 9:42. As the district court said, Plaintiffs' argument that COVID-19 precluded them from filing a Rule 39(b) motion is weak because they made numerous other filings throughout the height of the pandemic with no noted difficulty.

Second, Plaintiffs argue that their error should be excused under a quasi-estoppel theory because Liberty promised not to oppose any Rule 39(b) motion and Liberty's counsel referenced a jury trial several times before filing the motion to correct. The district court did not abuse its discretion in rejecting this argument. Liberty's consent to Plaintiffs' Rule 39(b) motion in May 2020, without more, did not preclude Liberty from filing the motion to correct in December 2022. Consent to file a motion does not stop the court's calendar nor convey the right to relief never formally requested. Plaintiffs never filed the agreed-upon motion. Any reliance Plaintiffs placed on Liberty's position in May 2020 was not reasonable after the time to request a jury trial had expired.

Plaintiffs also argue that they were prejudiced through deprivation of their jury trial right and because the preparation of jury instructions would have uncovered the assignment issue on which they suffered defeat in the bench trial. We are unconvinced that these claimed prejudices show that the district court abused its discretion, especially where Plaintiffs did not argue that they were prejudiced until their motion for reconsideration after completion of the bench trial. *Cf. Littlefield*, 614 F.2d at 585 (noting that "[g]ranting [the] request for a trial by jury" at that stage of the litigation "would have further delayed final disposition of the matter").

---

[3]Plaintiffs ask this court to adopt an "excusable neglect" standard, but we decline to do so. Plaintiffs' authority is not related to a request for a jury trial, and Federal Rule of Civil Procedure 39(b) does not discuss "excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391 (1993) (discussing the "excusable neglect" standard from the Federal Rules of Bankruptcy); *Fink v. Union Cent. Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir. 1995) (applying the *Pioneer* standard to interpret the meaning of "excusable neglect" in Federal Rule of Appellate Procedure 4(a)(5)).

Plaintiffs argue that *Littlefield* is different because the plaintiff there "engaged in a pattern of conduct apparently intended to delay trial." *See id.* That distinction notwithstanding, we still find *Littlefield* instructive—especially given the "heavy burden resting upon [the plaintiff] to demonstrate that the court abused its discretion in refusing a jury trial." *First Wis. Nat'l Bank of Rice Lake v. Klapmeier*, 526 F.2d 77, 80 (8th Cir. 1975). Thus, we find that the district court did not abuse its discretion in denying Plaintiffs' request for a jury trial.

### B. *Exclusion of the Expert Report*

Plaintiffs' deadline to file expert reports was July 7, 2021. Plaintiffs filed Raddock's initial expert report on June 7, 2021, but they did not file Raddock's additional report on loss of enterprise damages until December 15, 2021. This second report provided an estimate of $3.69 million in damages that E&I suffered "in addition to" the damages calculated in the original expert report. R. Doc. 49-5, at 4. The district court excluded this second report because it found it to be a new report, not a supplemental report. The court found that the failure to timely file the new report was not substantially justified or harmless. The district court also declined Plaintiffs' request for a lesser sanction. Plaintiffs requested that the court reopen discovery and allow Liberty to depose Raddock on the additional issue. The court denied the requested alternative sanction because it would impose additional costs on Liberty and would require the court to extend the expert witness deadline, delaying the trial. "We . . . review the district court's exclusion of expert testimony for abuse of discretion." *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010).

If a party fails to timely file an expert report, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court may, on motion, impose a different sanction. *Id.* at (c)(1)(C). "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018). "Under Rule 37(c)(1), exclusion occurs

-11-

automatically by operation of the rule; the rule permits, but does not require, the imposition of an alternative sanction on a party's motion." *Id.* "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692.

We conclude that the district court did not abuse its discretion in excluding the additional expert report. The district court considered the *Wegener* factors and found that exclusion was appropriate. Information related to Plaintiffs' loss of business was available to them when they submitted the initial expert report. Liberty was prejudiced by Plaintiffs' filing misstep because it would expend substantial time and resources investigating and rebutting the damages asserted in the additional report. Although the court had not yet set a trial date when the expert report was excluded, it did note that the case would be delayed if discovery was reopened to allow Liberty to investigate these claims. Although the testimony was important to establish some damages, the damages asserted in the second report were not Plaintiffs' only damages, so they could still prove their claims without the additional report. Thus, we find that the district court did not abuse its discretion in concluding that Plaintiffs' untimely report was not substantially justified nor harmless.

## C. *Breach of Contract*

Plaintiffs sued Liberty for breach of contract, alleging that Liberty failed to compensate them as promised under the completion contract.[4] Under South Dakota law, to prove breach of contract, the plaintiff "must show '(1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages.'" *Dziadek v. Charter Oak Fire Ins. Co.*, 867 F.3d 1003, 1009 (8th Cir. 2017) (quoting *Bowes Constr., Inc. v. S.D. Dep't of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010)). The district

---

[4]The amended complaint technically sued for breach of the tender agreement, but that contract was between Plaintiffs and WAPA, not Liberty. Further, the district court and the parties discuss the completion agreement as the relevant contract.

court found that Liberty made a promise to E&C, but E&C failed to make a prima facie showing for relief because it suffered no damages. Although E&I suffered damages, it could not prove Liberty made an enforceable promise to E&I unless Plaintiffs could show that E&C assigned its rights and responsibilities under the completion contract to E&I.[5] The district court found no evidence of a valid assignment between E&C and E&I.

We agree with the district court that Plaintiffs did not show a valid assignment of E&C's rights under the completion contract to E&I. Under South Dakota law, oral assignments are generally valid, and "any language, however informal, will be sufficient to show the intent of the assignor." *Northstream Invs., Inc. v. 1804 Country Store Co.*, 697 N.W.2d 762, 766 (S.D. 2005). "Regardless of how it is made, an assignment must contain clear evidence of the intent to transfer rights, must describe the subject matter of the assignment, and must be noticed to the obligor." *Id.* "[I]t must be clear that the party intended a present transfer of rights and did not merely bind himself to make a future transfer." *Id.*

The district court did not clearly err in finding that there was no evidence of a present intent to transfer E&C's rights under the completion contract to E&I. Bruce testified that he asked WAPA to change the completion contractor to E&I when he read the completion contract. Bruce's testimony may show that he wanted E&I to be the completion contractor, but it does not establish a present intent to assign E&C's rights to E&I. *Cf. Fritzel v. Roy Johnson Constr.*, 594 N.W.2d 336, 339 (S.D. 1999) (finding evidence of an assignment of an estate's cause of action because the plaintiff submitted an affidavit from a party stating that the estate was closed after the cause of action was transferred by agreement of the beneficiaries). Further, Plaintiffs argue that there is evidence of an assignment because E&I ultimately acted as the

---

[5]Plaintiffs argue that Liberty waived the assignment issue because it failed to raise it as an affirmative defense. First, this is not an affirmative defense because Plaintiffs must show an assignment to prove an element of their claim. Second, Liberty did plead it because it argued in its answer that E&C suffered no damages and that Liberty made no promise to E&I.

completion contractor. Again, this does not show a present intent to transfer E&C's responsibilities to E&I. In *Fritzel*, although the assignment was oral and informal, there was an affidavit that the parties agreed to transfer the cause of action to the assignee, and that was sufficient. Here, Plaintiffs have provided no such evidence. Therefore, we affirm the district court's holding that Liberty is not liable for breach of contract.

### D. *Fraud, Deceit, and Negligent Misrepresentation*

Plaintiffs sued Liberty for one count of fraud and deceit and one count of negligent misrepresentation. After the bench trial, the district court found that Liberty was not liable on either claim. Under South Dakota law, fraud and deceit require an intent to deceive. *See Stockmen's Livestock Mkt., Inc. v. Norwest Bank of Sioux City*, 135 F.3d 1236, 1243 (8th Cir. 1998). Similarly, negligent misrepresentation requires an "intent to induce a particular action." *Fisher v. Kahler*, 641 N.W.2d 122, 126 (S.D. 2002). The district court found that Mattingly made a false statement in his email to Bruce because he did not give Bruce the CDs from Dittmer, but Liberty was not liable for fraud or negligent misrepresentation because Mattingly "did not intend to deceive" Bruce, R. Doc. 118, at 29, nor did he "inten[d] to induce Bruce to rely on [his] representations," *id.* at 33. Further, Liberty was not liable for negligent misrepresentation because Bruce did not reasonably rely on Mattingly's statements. Intent is a question of fact. *See Sporleder v. Van Liere*, 569 N.W.2d 8, 11 (S.D. 1997) ("Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." (internal quotation marks omitted)); *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 894 (8th Cir. 2002) ("Generally, the issue of whether a particular intent existed is a question of fact for the jury."). Accordingly, we review the district court's factual findings for clear error. Plaintiffs argue that these findings are reversible, clear error. We disagree.

The district court's finding that Mattingly did not have the requisite intent is not clearly erroneous. Ample evidence in the record supports this finding. Mattingly testified that he believed Bruce had access to the documents and the information on the CDs and that Bruce had a good understanding of the project. *But cf. Brandriet v.*

-14-

*Norwest Bank S. Dakota, N.A.*, 499 N.W.2d 613, 616–17 (S.D. 1993) (upholding a jury verdict finding defendant liable for fraudulent misrepresentation—which requires "the intent to deceive and for the purpose of inducing the other party to act upon it"—because the defendant made false representations "to induce [the plaintiff] to keep banking" with the defendant). The district court indicated that it found no intent to deceive because it "credit[ed] Mattingly's testimony based on his credible demeanor while on the stand." R. Doc. 133, at 5. To the extent that Plaintiffs argue that the district court should not have credited Mattingly's testimony, we are unpersuaded to disturb its finding. *See Wright*, 730 F.3d at 739 ("[A] district court's credibility determinations in a bench trial, like a jury's credibility determinations in a jury trial, are virtually unassailable on appeal." (internal quotation marks omitted)).

The district court also rejected the negligent misrepresentation claim because it found that Bruce did not reasonably rely on Mattingly's statements. Under South Dakota law, to prove negligent misrepresentation, the plaintiff must show justifiable reliance on the statement. *See Fisher*, 641 N.W.2d at 126–27. Justifiable reliance is a question of fact. *See id.* at 127 (finding a question of fact on whether the plaintiffs actually and justifiably relied on the representations). Accordingly, we review for clear error.

We find no clear error in the district court's finding that Bruce did not reasonably rely on Mattingly's statements. Plaintiffs argue that there was reasonable reliance because Mattingly testified that it would be reasonable for Bruce to rely on his representations. The district court acknowledged this evidence but still found any reliance was unreasonable. Bruce testified that he knew he was missing documents but bid anyway at the direction of WAPA, not Mattingly. Bruce arrived on site before Liberty. He testified that he knew the project was risky and in bad shape. Thus, the district court's factual finding was "supported by substantial evidence in the record," and Plaintiffs have provided no authority to show—nor argued—that this finding was "based on an erroneous view of the law." *See Wright*, 730 F.3d at 737 (explaining the clearly erroneous standard).

-15-

Therefore, we affirm the district court's finding that Liberty is not liable for fraud, deceit, and negligent misrepresentation.

## E. *Unjust Enrichment*

Plaintiffs also argue that the district court erred in granting summary judgment for Liberty on their unjust enrichment claim. The district court granted summary judgment for Liberty because it found that unjust enrichment "is unavailable when a valid, enforceable contract governs the dispute." R. Doc. 60, at 31. "[B]ecause E&I consistently represented through its pleadings that it entered into a valid, enforceable contract with Liberty, and because Liberty admitted there was a contract," the district court found that unjust enrichment was not available and dismissed that count. *Id.* at 33. For the first time on appeal, Plaintiffs argue that the district court "should have revisited its analysis" for their unjust enrichment claim after the bench trial because the district court found that "E&I did not have a valid contract with [Liberty] for payment of the materials." Appellant's Br. 32. Because Plaintiffs did not raise this argument below, we decline to address it. *See Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002).

## III. *Conclusion*

For the foregoing reasons, we affirm.

_____