NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**E&I GLOBAL ENERGY SERVICES, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1286

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00244-DAT, Judge David A. Tapp.

---

Decided:  October 17, 2025

---

JOSEPH WHITCOMB, Whitcomb, Selinsky, PC, Lakewood, CO, argued for plaintiff-appellant.

DAVID MICHAEL KERR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

---

Before DYK, PROST, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge*.

E&I Global Energy Services, Inc. ("E&I Global") appeals from a decision of the United States Court of Federal Claims ("Claims Court") granting the government's motion for summary judgment. *E&I Glob. Energy Servs., Inc. v. United States*, 168 Fed. Cl. 206, 209 (2023) ("*Claims Court Decision*"). The case arose from an E&I Global contract with the United States Department of Energy's Western Area Power Administration ("WAPA") to construct a high-voltage electricity substation. WAPA terminated the contract for default for failure to complete construction in a timely manner. E&I Global brought suit in the Claims Court, claiming excusable delay and seeking conversion of the termination for default into termination for convenience. The Claims Court sustained WAPA's decision to terminate the contract for default, finding that E&I Global's contract performance failures were not caused by excusable delays. *Id.* at 209. For the reasons explained below, we *affirm* in part, *vacate* in part, and *remand* for further proceedings.

## BACKGROUND

We have recounted many of the relevant facts in this case in a previous decision, *E&I Glob. Energy Servs., Inc. v. United States*, No. 2022-1472, 2022 WL 17998224 (Fed. Cir. Dec. 30, 2022) (nonprecedential) ("*Federal Circuit Remand*"). Briefly stated, the facts are that in June 2015, WAPA solicited bids to construct a high-voltage electricity substation in South Dakota. In September 2015, WAPA awarded the contract to Isolux Corsan, LLC ("Isolux"). The contract required Isolux to provide all labor, materials, and equipment necessary to construct the substation. Liberty Mutual Insurance Company and the Insurance Company of the State of Pennsylvania (collectively, the "Sureties") issued bonds guaranteeing that the project would be completed and that Isolux's unfulfilled labor and materials obligations to third parties

incurred in the performance of the project would be paid. WAPA terminated the contract with Isolux for default in December 2016. The Sureties assumed responsibility for performance and outstanding Isolux debts.

In March 2017, the Sureties employed E&C Global, LLC to complete the project, entering into a "Completion Agreement" under which E&C Global, LLC was named as the "Completion Contractor" and agreed to complete the project, and the Sureties agreed to pay a firm-fixed price of $5,428,625.69 (the "completion price").[1] J.A. 434–36. The appellant in this case, E&I Global (a different entity than E&C Global, LLC), was named as a subcontractor in the Completion Agreement.

WAPA subsequently executed a new contract (the "E&I Global contract") with E&I Global as the prime contractor.[2] On September 12, 2017, WAPA formally authorized E&I Global to start work on the substation under the E&I Global contract. This authorization provided that E&I Global was required to complete construction of the substation by April 3, 2018.

E&I Global alleges that it immediately ran into delays with the project. According to E&I Global, Isolux owed money to the subcontractors and suppliers on the project, and those subcontractors and suppliers refused to continue

---

[1]    Our previous decision in this case did not turn on any difference between E&I Global and E&C Global, LLC. We noted that "[t]he parties treat[ed] E&I [Global] and E&C [Global, LLC] . . . as identical" and so "we d[id] as well." *Federal Circuit Remand* at \*1 n.1. We did not decide whether the entities were the same.

[2]    The Sureties remained responsible for paying Isolux's subcontractors and suppliers for work performed, or supplies purchased, before E&I Global took over the project.

to work on the project until they were paid past due amounts. Though the Sureties were required to pay Isolux's project-related debts, they allegedly failed to fulfill those obligations. To complete the project, E&I Global alleged that it was required to pay the former Isolux suppliers and subcontractors what they claimed to be owed by Isolux. E&I Global asserts that these payments strained its finances and that as a result of these difficulties it missed the contract deadline. On April 3, 2018, the scheduled completion date, construction was incomplete.

In May 2018, WAPA terminated the E&I Global contract for default for failure to complete construction in a timely manner. On October 1, 2018, E&I Global submitted a certified Contracts Disputes Act claim seeking $3.6 million in damages and reversal of its default termination. The WAPA contracting officer denied E&I Global's claim. E&I Global then brought suit in the Claims Court, seeking damages and conversion of the termination for default into termination for convenience.

The Claims Court rejected E&I Global's claims. The Claims Court granted the government's motion to dismiss several claims, granted the government's motion for summary judgment as to others, and granted the government's motion for judgment on the pleadings as to E&I Global's claim that the government improperly terminated the contract for default. *Federal Circuit Remand* at *2. Those rulings were appealed to this court. We affirmed many aspects of the Claims Court's decision, but we reversed its dismissal of E&I Global's claim that the government improperly terminated the contract for default because the actions of other government contractors (i.e., the Sureties) caused the delay and remanded for further proceedings. *Id.* at *1.

On remand, E&I Global continued to argue that the Sureties' failure to pay Isolux's debts to subcontractors and equipment suppliers led to excusable delay, because

E&I Global instead paid those debts and, as a result, was financially unable to complete the project in a timely fashion. E&I Global also argued its delay was excusable because the government allegedly failed to timely deliver wiring schematics for the construction project. The government moved for summary judgment, arguing that the undisputed facts demonstrated that E&I Global's performance failures were not caused by excusable delay because E&I Global was not the "Completion Contractor" in the agreement with the Sureties, E&I Global was not forced to pay Isolux's debts, any delays caused by the subcontractors or the absence of equipment were foreseeable and controllable, and E&I Global's missing schematic argument was not properly raised. The government provided no declarations to support its motion. As to the issues with the subcontractors, the only factual material that the government presented in its motion was the testimony of E&I Global's owner that E&I Global was aware of the subcontractors' dissatisfaction, and E&I Global's admissions in interrogatory responses that the subcontractors threatened to cease performance that E&I Global had not tried to hire other subcontractors instead of paying the original subcontractors. *See* Def.'s Mot. Summ. J. 18–19, *Claims Court Decision* (July 21, 2023) (No. 1:19-cv-00244), Dkt. No. 117.

The Claims Court granted the government's motion for summary judgment. The court determined that the E&I Global's excuse was "irrational and [could not] form the basis for excusable delay" for two reasons. *Claims Court Decision* at 214. First, E&I Global was not the "Completion Contractor" with the Sureties, and the Sureties had no obligation to E&I to pay the subcontractors. Second, the court found that E&I Global made no effort to find a new contractor and "provide[d] no evidence that replacing the subcontractors would actually have been more costly." *Id.* at 213. As to the equipment, the Claims Court found that the absence of equipment was foreseeable. The Claims

Court also determined that E&I Global's schematics argument was waived because the issue was not timely raised to WAPA. The court accordingly "c[ould] find no excusable delay that hindered the completion of the subject contract," and therefore held that "WAPA's decision to terminate E&I [Global] for default was justified." *Id.* at 217.

E&I Global timely appealed the decision of the Claims Court.[3] We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review a grant of summary judgment de novo. *Frankel v. United States*, 842 F.3d 1246, 1249 (Fed. Cir. 2016). Rule 56(a) of the Claims Court provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "On a motion for summary judgment, 'all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party.'" *Frankel*, 842 F.3d at 1249–50 (quoting *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994)). We conclude that the

---

[3] We note that in a separate action, E&I Global brought suit in district court against one of the Sureties, Liberty Mutual Insurance Company ("Liberty"), alleging breach of contract and other claims. *See* Complaint, *E&I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, No. 4:20-cv-04033, (D.S.D. Feb. 21, 2020), Dkt. No. 1. The Eighth Circuit affirmed the district court's holding that Liberty was not liable for breach of contract because the Completion Agreement that it entered listed E&C Global, LLC as the completion contractor, and Liberty did not make an enforceable promise to E&I Global. *See E&I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, 134 F.4th 504, 514 (8th Cir. 2025).

Claims Court erred in granting summary judgment as to the subcontractor delay. We therefore vacate and remand for further proceedings as to that issue but affirm in other respects.

I

Under the Federal Acquisition Regulations ("FAR"), if a contractor is terminated for default, and its delay is later deemed excusable, the termination will effectively be deemed to have been "issued for the convenience of the Government." FAR § 52.249-10(c).[4] FAR 52.249-10(b)(1) governs the requirements for excusable delay. Under that provision, a contractor "must show that [its] delay resulted from 'unforeseeable causes beyond the control and without the fault or negligence of the Contractor.'" *Sauer Inc. v. Danzig*, 224 F.3d 1340, 1345 (Fed. Cir. 2000) (quoting FAR 52.249-10(b)(1)). A contractor must also "prove that it took reasonable action to perform the contract notwithstanding the occurrence of such excuse," and the "unforeseeable cause must delay the overall contract completion; i.e., it must affect the critical path of performance." *Id.* (quoting *Int'l Elecs. Corp. v. United States*, 646 F.2d 496, 510 (Ct. Cl. 1981)). The regulations provide several examples of excusable delays, among them "delays of subcontractors or suppliers . . . arising from unforeseeable causes beyond the control and without the fault or negligence of both the [prime] Contractor and the subcontractors or suppliers," and delays caused by "acts of another Contractor in the performance of a contract with the Government." FAR 52.249-10(b)(1)(iii), (xi).

---

[4] The FAR are codified in Title 48 of the Code of Federal Regulations. For brevity, we refer to the FAR without corresponding C.F.R. citations. For example, FAR 52.230-2 corresponds to 48 C.F.R. § 52.230-2.

We see two errors in the Claims Court's decision granting summary judgment to the government on the issue of excusable delay with respect to the subcontractors.

A

First, we conclude that the Claims Court erred in determining that the Sureties' failure to pay Isolux's debts could not be a source of delay because E&I Global was not the "Completion Contractor" on the Completion Agreement with the Sureties. *Claims Court Decision* at 214.

This is incorrect. As noted previously, the FAR provide examples of excusable delays, including delays caused by "acts of another Contractor in the performance of a contract with the Government." FAR 52.249-10(b)(1)(xi). The Sureties were contractors with the government under the bonds and tender agreement. The government has not identified, and the Claims Court did not cite, any case requiring a contractor to be in privity with the other contractor for such a delay to be excused. Indeed, the caselaw is to the contrary. *See, e.g.*, *Envirocon, Inc.*, AGBCA No. 81-125-3, 81-2 B.C.A. ¶ 15268 (Aug. 10, 1981) (holding that government's termination for default for contractor's failure to perform in a timely manner must be converted to termination for convenience where first contractor's timely performance depended on government's proper irrigation of the site and irrigation was delayed by second contractor, who was not in privity with first contractor); *Mod. Home Mfg. Corp.*, ASBCA No. 6523, 66-1 B.C.A. ¶ 5367 (Feb. 4, 1966) (explaining that first contractor was entitled to time extension where delay of second contractor in preparing the contract site impaired first contractor's ability to perform on time, despite fact that first and second contractors were not in privity with each other); Steven W. Feldman, *Government Contract Guidebook* § 29:16 (4th ed. 2024) (recognizing that the "acts of another contractor" type of delay "commonly arises in construction contracts where the government enters into agreements with several contractors for

concurrent or sequential performance at the same site," and "[i]n this situation, the delay of one contractor may affect the ability of another contractor to perform on time"). We see nothing in the FAR provisions suggesting a privity requirement, and we hold there is no such requirement.

Nor did the government demonstrate on summary judgment that the subcontractor issues were foreseeable. The Claims Court determined that, here, "the issues with the subcontractors [were not] unforeseeable," reasoning that E&I Global knew, before it acquired its contract with the government, about the subcontractors' unhappiness and that it was unreasonable for E&I Global to "expect the temperaments to immediately cool." *Claims Court Decision* at 213. However, the representation by the Sureties in the Completion Agreement that the Sureties had ratified or were in the process of ratifying agreements with these subcontractors raised at least a genuine question as to whether the delays were foreseeable. *See* J.A. 438 ("[The] Sureties have executed, or are in the process of executing, certain Ratification Agreements with Principal's subcontractors and/or vendors previously utilized on the Project . . . .").[5]

---

[5]    The government points out that E&I Global conceded that, at the time E&I Global took over as the prime contractor on the project, it knew "that the Sureties . . . were making (reluctant) payments pursuant to their bond obligations" and that the Sureties were "taking a long time to get their payments out to everybody on the bond claim." Appellee's Br. 10 (quoting Pl.'s Resp. Opp'n Summ. J. 11, *Claims Court Decision* (Aug. 25, 2023) (No. 1:19-cv-00244), Dkt. No. 119). But this hardly suggests that E&I Global was aware that once the Completion Agreement and E&I Global contract were executed, any delay would continue and there was evidence to the contrary, as noted in the text.

B

The Claims Court erred in a second aspect. The Claims Court granted summary judgment in the government's favor because it determined that E&I Global did not take "reasonable action to perform the contract" because it made "[n]o attempts . . . to locate alternative subcontractors and suppliers" and did not provide "evidence that replacing the subcontractors would actually have been more costly." *Claims Court Decision* at 213.

At the summary judgment phase, the government, as the moving party, bore the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But the government presented no evidence that E&I Global's only reasonable course of action was to hire other subcontractors. While E&I Global conceded that it did not try to hire other contractors, that concession alone does not mean there is not a genuine issue of material fact as to the reasonableness of E&I Global's actions. The government simply presented attorney argument that "[E&I Global's] inaction standing alone necessitates rejection of the subcontractor-based aspect of its excusable delay claim." Def.'s Reply Supp. Summ. J. 10–11, *Claims Court Decision*, (Sept. 8, 2023) (No. 1:19-cv-00244), Dkt. No. 120. The government offered no legal support for its view.

Our previous decision in this case provides no support for the government's theory. There, we only explained that "finding alternative subcontractors and suppliers" was one example of a possible action that E&I Global may have taken instead of paying the subcontractors and suppliers. *Federal Circuit Remand* at *5. We did not hold this action was essential to reasonableness. *See id.*

Moreover, while E&I Global did not attempt to hire other subcontractors, there is other evidence in the summary judgment record that may speak to reasonableness including that the Completion Agreement encouraged the

use of Isolux's subcontractors, J.A. 438; that E&I Global was under a tight schedule to finish construction on the substation, *see* App. to Def.'s Mot. Summ. J. 46, *Claims Court Decision* (July 21, 2023) (No. 1:19-cv-00244), Dkt. No. 117-1; that at least some of the suppliers were the only local option, *id.* at 38, 43; and that E&I Global was suffering complaints and harassment by the subcontractors, *see* Pl.'s Resp. Opp'n Summ. J. 9, 11, *Claims Court Decision* (Aug. 25, 2023) (No. 1:19-cv-00244), Dkt. No. 119. In short, the government did not show there was an absence of a genuine issue of material fact as to these factors and the Claims Court erred in granting summary judgment in the government's favor.

These two errors undermine the Claims Court's grant of summary judgment as to the subcontractor issues and necessitate vacatur. We do not suggest that E&I Global has demonstrated excusable delay as a matter of law or could prevail at trial. Whether E&I Global can establish that it is entitled to relief must await further proceedings in the Claims Court.

## II

We briefly address two of E&I Global's remaining arguments. We conclude the Claims Court did not err in either respect.

First, E&I Global argues that its delay was excusable because it arose from Isolux's failure to provide certain pieces of equipment. The Claims Court correctly determined that there was no genuine issue of material fact that these equipment issues were foreseeable and therefore did not excuse delay. *Claims Court Decision* at 214–17. The Claims Court relied on undisputed evidence showing that E&I Global was aware that there was no documentation that Isolux ordered most of the equipment at issue and E&I Global was aware that the other equipment was missing from the worksite. On appeal, E&I Global has not

shown error in the Claims Court's determination.[6] Nor has it shown error with respect to alleged representations by the Sureties.[7]

---

[6] Before the Claims Court, E&I Global argued that its delay was caused by needing to fund unforeseeable expenses, including the provision of nine pieces of "missing equipment" that Isolux allegedly ordered, but did not pay for, prior to its termination. *Claims Court Decision* at 214–15. E&I Global alleged that it was not foreseeable that it would have been responsible for paying for the equipment because, under the Completion Agreement, the Sureties were responsible for paying for "materials ordered by, but not paid by, [Isolux] prior to the date of [the Completion] Agreement." *Claims Court Decision* at 215 (first alteration in original) (quoting J.A. 436). As to seven of the nine pieces of equipment, the Claims Court found that the undisputed evidence showed that E&I Global knew or should have known that Isolux had never ordered the equipment in the first place, and so the Sureties had no obligation to pay for those items under the Completion Agreement. As to the other two pieces of equipment, the Claims Court found that E&I Global knew that they were missing three months before the Completion Contract was executed, despite the equipment order having been approved five months previously, and so E&I Global could not rely on the provision of that equipment as excusing its delay.

[7] On appeal, E&I Global also argues that its delay was excusable because it was caused by E&I Global's reliance on representations made by Mr. Mattingly, a representative of one of the Sureties, as to the allegedly missing equipment. Specifically, E&I Global argues that Mr. Mattingly represented to E&I Global that the expense of one of the nine pieces of missing equipment, *see supra* n.6, was "well below what E&I [Global] initially proposed"; that

Second, E&I Global argues its delay was excusable because WAPA was negligent and did not timely deliver wiring schematics that were necessary for E&I Global to perform work on control board and outdoor wiring at the substation. The Claims Court properly determined that the schematics argument was forfeited because it was not raised within the time period required by the FAR. *Claims Court Decision* at 217. Under FAR 52.249-10(b)(2), a contractor must, "within 10 days from the beginning of any delay . . . notif[y] the Contracting Office in writing of the causes of the delay." E&I Global first raised the issue of delay due to the schematics over two thousand days after it received the schematics. The Claims Court did not err in deeming the untimeliness argument waived.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. We *affirm* the grant of summary judgment as to the equipment and schematics issues. We *vacate* the grant of summary judgment as to the

---

"there was other actual missing equipment that was alleged ordered [by Isolux] and approved but was not shipped because of lack of payment"; and that "Mr. Mattingly falsely assured E&I [Global] that these ordered and approved items were paid for." Appellant's Br. 8 n.2. E&I Global does not appear to have raised these arguments to the Claims Court. E&I Global raised related negligent misrepresentation claims in its district court case against one of the Sureties, but it fails to identify where it argued to the Claims Court that Mr. Mattingly's assurances or representations contributed to excusable delay. We decline to consider the arguments for the first time on appeal. Additionally, E&I Global fails to identify what "other actual missing equipment" is at issue beyond the nine pieces of equipment addressed by the Claims Court.

subcontractor issues and *remand* for further proceedings consistent with this opinion.

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

COSTS

Costs to appellant.